ALBERT J. STONE et al.

v.

ALBERT M. BILLINGS et al.

*Filed at Ottawa June 8, 1897.*

1. HUSBAND AND WIFE—*wife may become surety for her husband's debt.* There is no distinction between a married woman's contract of suretyship for her husband's debt and that for the debt of a stranger, and she may bind her separate property as security for its performance.

2. SAME—*when wife's contract of suretyship for husband's debt is valid.* A note and deed of trust executed before delivery by the wife with her husband, to secure an antecedent debt of her husband then due, in consideration that the time of payment be extended three years, is valid, and binds the wife's separate property covered by the deed of trust.

3. TENDER—*notice of intended tender is not equivalent to actual tender.* Notice of an intention to make a tender does not have the force and effect of an actual tender, and is of no avail where the actual tender comes too late.

4. CONTRACTS—*party relying on conditional agreement must show a willingness to perform condition.* One relying on a conditional agreement extending the time of payment of interest as a defense to a bill for foreclosure, must show, by his pleadings or otherwise, that he was ready and willing to perform the condition.

5. SOLICITORS' FEES—*full proof is required to sustain apparently excessive solicitor's fee.* Under a stipulation in a mortgage for allowance of reasonable solicitor's fees in case of foreclosure, the allowance of a large and apparently excessive amount can only be sustained by full proof that it is the usual and customary charge.

6. SAME—*when evidence does not sustain allowance of solicitor's fees.* An allowance of $8000 as solicitor's fees for confessing judgment and foreclosing a mortgage cannot be sustained, where the only evidence concerning the same is given by two of the complainant's witnesses, one testifying that $7500 and the other that from $5000 to $10,000 would be a reasonable, usual and proper charge.

7. PRACTICE—*error in allowance of excessive solicitor's fees may be cured by remittitur.* The Supreme Court will not reverse a foreclosure decree for the allowance of excessive solicitor's fees, where, on appeal, a *remittitur* is entered by complainant's solicitor of such an amount as, in the opinion of the court, reduces the allowance to a reasonable and usual charge.

*Stone* v. *Billings,* 63 Ill. App. 371, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Albert M. Billings, and Cornelius K. G. Billings, trustee, filed their bill in the Superior Court of Cook county October 13, 1894, to foreclose a deed of trust made by Albert J. Stone and Mary S. Stone, each of whom executed the deed individually and also as the spouse of the other, conveying the property therein described to C. K. G. Billings as trustee, to secure the payment of a certain sealed promissory note running as follows: "On or before three years after date, for value received, we promise to pay to the order of ourselves the principal sum of $179,-700," etc., signed by both of the Stones, dated March 1, 1894, with interest at seven per cent, payable semi-annually on the first days of March and September of each year; and further providing that if default should be made in the payment of any one of the installments of interest at the time and place when the same became due, and such default should continue for thirty days, then the principal sum should, at the election of the legal holder, at once and without notice become due and payable, and containing the usual power of attorney to enter judgment by confession at any time after the same became due and payable either by default or lapse of time, —which note was endorsed in blank by the payees. The trust deed recited that the Stones were jointly indebted to the legal holder of the note, and contained an agreement in regard to any default or breach substantially the same as that in the note, and also the further stipulation and agreement that the Stones might obtain a release of any one or more of the parcels therein described upon payment to the legal holder of the note of the amount set opposite the description of such parcel in a schedule attached to the deed of trust. The deed also contained

the usual covenants as to payment of taxes, insurance, abstracts, and reasonable solicitors' fees to be fixed by the court.   The bill alleged that on March 31, 1894, the sum of $5300, with interest, was paid to Billings and credited on the note; that the semi-annual interest was demanded on September 1, 1894, but not paid, and that such default had continued for more than thirty days, and that the holder had elected to declare the principal due and payable; that taxes and insurance had not been paid, and that Billings had been compelled to redeem from tax sales and pay for continuation of abstract.

To this bill a general demurrer was filed by the defendants and overruled by the court, and the defendants answered separately.   Albert J. Stone admitted the making of the note and trust deed; alleged a tender on November 27, 1894, by defendants to Billings of $11,000 for the purpose of redeeming out-lot 7, one of the parcels described in the deed, and of obtaining a release of the same from the trust deed, that being the sum mentioned in the schedule as the releasable price of such parcel; that Billings would not accept the money so tendered, and that by reason of such tender out-lot 7 had in equity become discharged from the lien of the trust deed, and that complainants were not entitled to a foreclosure or to any relief in respect to such out-lot.   The answer further denied that the sum of $5300, with interest, was paid to Billings on the principal of the promissory note, but alleged that at the time the note for $179,700 was executed Stone was liable as guarantor on a certain note made by one Alice S. McCrea (now Green) to the Home National Bank, of which A. M. Billings was president, for $5300, and of which note Billings was then the owner and which was then due, and that on account of his liability as such guarantor, Stone, at the request of Billings, included the amount of the McCrea note in the note for $179,700, and that thereby the time on said $5300 note was extended for three years; that the legal effect and

equitable result of the transaction were that Billings had loaned Stone said amount for three years, and that it was not due when paid by Alice McCrea on March 31, 1894, to Billings, and that Billings had no right to apply the $5300 on the note of Stone without his consent, and that it was his duty to pay to Stone said $5300 or to make such application thereof as Stone might direct; that he requested Billings to pay the taxes for 1893, amounting to $3900, out of said sum, but that Billings neglected and refused to do so, although he had about that time promised him that he would do so, and that Stone relied on such promise; that if Billings had kept his promise in respect to the taxes no default in payment of the same would have occurred; that if Billings had paid out any money for taxes or insurance the sum paid out would not exceed the $5300, and that there was therefore no default. The answer further alleged that Billings, on August 14, 1894, for a valuable and sufficient consideration, promised and agreed that he would not require the interest due September 1, 1894, to be promptly paid, and that he would not take advantage of its non-payment, but would extend the time of payment until A. J. Stone could obtain money to pay the same; that he relied on such promise, and was arranging for obtaining such interest money when Billings declared the note due, and that it was the duty of Billings, by virtue of the premises, to have made a demand for the payment of the interest before commencing suit.

Mary S. Stone in her answer admitted the making of the note and trust deed, but denied that she was indebted to the complainant in any manner, and alleged that embraced in the trust deed were some pieces of property of which she had for many years been the owner, as her sole and separate property; that the note for $179,700 was given by way of renewal of twelve separate notes signed by A. J. Stone and by her as surety for A. J. Stone, setting out in detail the circumstances as to each note, and showing that she signed some of them long after they

had been executed by her husband and he had received the money on them, without any consideration to her for her signature; that she never received any money on any of these notes; that each of the notes contained a warrant of attorney to confess judgment; that on January 4, 1894, Billings caused judgment to be entered on these notes, which judgment she alleged was entirely invalid, amounting to $172,547.36; that afterwards Billings agreed with A. J. Stone that if A. J. Stone as principal and she as surety would sign a new promissory note embracing therein the judgment and costs, amounting altogether to $174,400, (of the invalidity of which judgment she then had no knowledge,) and also the amount of the McCrea note of $5300, on which Stone was liable as guarantor, he (Billings) would give to A. J. Stone an extension of three years from March 1, 1894, for the payment of the $179,700, and that, with the distinct and positive understanding on her part and assurances of Billings that the note gave three years' time from its date for payment, she signed the note and trust deed without reading either. Her answer further alleges that on November 23, 1894, Billings, fraudulently, wickedly and to oppress her, procured a judgment at law to be entered upon the said note in the Superior Court for $183,784.68, and that as to her separate property she is not bound by such judgment, and asks that a decree be entered in her favor discharging her and her property, etc.

Mary S. Stone also filed her cross-bill, setting up substantially the same facts as in her answer and in the answer of Albert J. Stone. Thereupon the complainants demurred to the cross-bill and filed exceptions to certain portions of the answers for impertinence and irrelevancy, and asked that they be expunged. The parts excepted to are the allegations of Mary S. Stone in respect to her separate property, the history of the previous notes of A. J. Stone and her connection therewith, the entry of judgment thereon, the circumstances attending the exe-

cution of the new note and trust deed, the entry of judgment on said new note, and the allegations that she is no more than a surety and that her separate property is not chargeable with such indebtedness; also the allegations of Albert J. Stone in regard to the tender of $11,000 to release out-lot 7, his explanation why he had not paid the taxes or the semi-annual interest, and the references to and conclusions drawn from the payment of the $5300 note by McCrea. Afterwards Mary S. Stone confessed the demurrer to the cross-bill, and took leave to amend the same and also her answer. In her amended answer she alleged the tender of the $11,000 to release out-lot 7, and the promise of Billings not to demand the semi-annual interest when due and to give further time, substantially as alleged in her husband's answer. The amended cross-bill reiterates the allegations set forth in the answers and amended answer, and prays that Billings be restrained from enforcing the judgment of November 23, 1894, for $183,784.68, against her or her property, and that it be vacated and the lien of the trust deed removed as to out-lot 7, and that Billings be required to redeem her real estate from the tax sales.

The complainants excepted to the amendments to the answer of Mary S. Stone as impertinent and irrelevant, and asked that they be expunged, and also demurred to the amended cross-bill. The court sustained the demurrer and dismissed the cross-bill for want of equity, and also sustained the exceptions to the various answers, and ordered that the parts excepted to be expunged. Defendants elected to stand by their answers and cross-bill. Thereafter, on March 18, 1895, the complainants filed their supplemental bill, setting up the entry of the judgment on November 23, 1894, on the note, for the sum of $183,-784.68 and costs against the defendants, and issue of execution on the same, and that the judgment was wholly unpaid and in full force, and that the trust deed stood as security for the judgment.

Albert J. Stone demurred to the supplemental bill, but afterwards withdrew his demurrer, and both defendants filed separate answers, in which they renewed the allegations in reference to the tender of the $11,000 to release out-lot 7 from the lien of the trust deed, alleging that a short time—a day or two—previous to the entry of the judgment Billings was advised of the desire and design of Stone to redeem out-lot 7 by paying him the $11,000 according to the terms of the deed and schedule, but that Billings fraudulently, wickedly, and to oppress the defendants and to deprive them of their rights and advantages under the trust deed, caused said judgment to be entered, and that afterwards Stone tendered to Billings the $11,000, etc., who refused to accept the same; that Mary S. Stone was only surety, and that Billings was fully cognizant of that fact; that a large number of parcels of the real estate included in the trust deed were her separate property, and that the refusal of Billings to release out-lot 7 incumbered her separate property beyond what the same ought to be incumbered, and was such fraud as to vitiate said judgment in equity, and denied that the judgment was a lien and that the deed ought to stand as security for the same, etc.

To all the various answers as finally settled the complainants filed their replications, and the cause was referred to the master to take proofs and report conclusions. Complainants gave in evidence the note, trust deed and judgment, tax receipts, etc., but the defendants offered no evidence whatever. The master reported that there was due the complainants $196,141.82, with interest from September 11, 1895, together with $7500 solicitors' fees. Objections were filed to the report and overruled by the master, and renewed as exceptions to the court, which approved the report of the master, overruled the exceptions and entered a decree of sale. The exceptions were to the findings that there had been default in the payment of interest, taxes and insurance; that the whole

indebtedness had become due and payable; to including the amounts paid for taxes, insurance and continuation of abstracts, and interest thereon, in the amount found due; to the finding in respect of the solicitors' fees, and to the whole amount found due. Defendants prayed an appeal to the Appellate Court but failed to perfect the same, and afterwards brought the case before that court on a writ of error. The Appellate Court affirmed the decree, and defendants have brought the cause to this court on a writ of error. The errors assigned are the sustaining of the demurrer to the cross-bill, of the exceptions to the answers to the original bill, the overruling of the exceptions to the master's report, and entering of the decree of sale.

FRANK J. CRAWFORD, and C. D. F. SMITH, for plaintiffs in error:

It matters not that a surety may sustain no injury by a change in the contract, or that it may even be for his benefit. He has the right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal. *Miller* v. *Stewart,* 9 Wheat. 680.

The surety has a right to judge for himself of the circumstances under which he was willing to be liable, and stand upon the very terms of his contract. 2 Parsons on Contracts, 17.

The surety cannot compel the creditor to receive the money, but his refusal to do so is a fraud on the surety, which exposes him to a greater risk and operates his discharge. Brandt on Suretyship, sec. 275.

A tender of the amount due, if the tender is refused, will extinguish the mortgage, though not the debt of the principal debtor. *Jones* v. *Guaranty Co.* 101 U. S. 622; *Cortwright* v. *Cade,* 21 N. Y. 343.

If a creditor does any act injurious to the surety or inconsistent with his rights, whereby he is or may be in-

167—12

jured, he will be discharged. Story's Eq. sec. 324; *King* v. *Baldwin,* 2 J. C. 554.

When there is an agreement in the mortgage to release specified portions of the mortgaged premises on being paid therefor certain specified sums of money, the mortgagors or their grantees are entitled to a release of such specified portions upon the payment or tender to the mortgagee of the specified amount, without interest thereon. *Clark* v. *Fountain,* 155 Mass. 464; 144 id. 287.

Contracts of suretyship, like all other contracts, must be based upon a valid consideration. If such contracts are made without consideration they are absolutely void. 24 Am. & Eng. Ency. of Law, 731, and authorities cited.

A surety who signs a note after its delivery to the payee is not bound unless there is a new consideration for his promise. *Barnes* v. *VanKeuren,* 47 N. W. Rep. 848.

WINSTON & MEAGHER, (JAMES F. MEAGHER, SILAS H. STRAWN, and FREDERICK S. WINSTON, of counsel,) for defendants in error:

Entering into an agreement, by a party and the surety on his notes, for the payment of the judgment rendered thereon, estops them to deny the validity of such judgment on the ground of insufficient power of attorney to enter the same. *Apperson* v. *Gogin,* 3 Ill. App. 48.

A party to a written contract is not permitted to testify as to his unexpressed motive, intent or belief at the time he signed the contract. The thoughts of one party cannot be proved to bind the other. His secret motives or intentions are entirely immaterial. *Packer* v. *Roberts,* 140 Ill. 9; *Gardt* v. *Brown,* 113 id. 475.

An extension of time of payment of an antecedent debt is a sufficient consideration to support a contract guaranteeing its payment. *Ives* v. *McHard,* 103 Ill. 97; *Underwood* v. *Hossack,* 38 id. 208.

Any act which is a benefit to one party or a disadvantage to the other constitutes a sufficient consideration to

support a contract. Forbearance to sue is a sufficient consideration. So is a release of remedy. *Buchanan* v. *Bank,* 78 Ill. 500; *Burch* v. *Hubbard,* 48 id. 164; Bishop on Contracts, 1266.

A tender of a debt secured by mortgage, made after default, must be kept good in order to discharge the mortgage. *Crain* v. *McGoon,* 86 Ill. 431; *Aulger* v. *Clay,* 109 id. 487; *Blain* v. *Foster,* 33 Ill. App. 298.

Where the tender is relied on, the bill must aver a tender and offer to bring the money into court. *DeWolf* v. *Pratt,* 42 Ill. 198; *Mohn* v. *Stoner,* 11 Iowa, 30.

When a bill is filed to foreclose a trust deed it is no defense that the money would have been paid at the time it became due, had not the complainant before, in conversation, told the defendant that he did not wish him to pay any more of the principal or interest when it became due, and that he would give timely notice, but no notice was given. *Massaher* v. *Mackerley,* 9 N. J. Eq. 440; *Fowler* v. *Brooks,* 13 N. H. 240; *Stuber* v. *Schack,* 83 Ill. 191.

Mr. JUSTICE CARTER delivered the opinion of the court:

Counsel for plaintiffs in error have summarized their contentions for a reversal of this decree, as follows: "There are four prominent facts, each clearly stated and set forth in the answers and amended cross-bill, which were material to be considered in the determination of this case, and which, by the action of the court below in sustaining the exceptions and demurrer, were eliminated from the case. These facts are as follows: First, Mary S. Stone was only a surety for Albert J. Stone; second, the rights of Mary S. Stone as surety, and Billings' disregard and violation of such rights; third, Mary S. Stone was induced to sign the said note and mortgage by the false promises and representations of Albert M. Billings; fourth, the false promises of Albert M. Billings in respect to his giving time for the payment of the interest due September 1, 1894."

There is nothing in the note or deed of trust from which it appears that Mary S. Stone was only a surety for her husband, Albert J. Stone. The deed of trust recites that each of the parties executed the same individually and as the spouse of the other. But, as the case is here presented, we think it is immaterial whether Mrs. Stone was a mere surety or not. She executed the note and deed of trust with her husband before delivery, and, as the pleadings show, to secure the payment of an antecedent debt of her husband, and she alleged in her pleadings that the consideration was that the time of payment should be extended to three years, the original debt having already become due. No distinction can now be made between the suretyship of a married woman for her husband's debt and that for the debt of a stranger. Such a transaction is not contrary to our laws, and even her separate property, if any, contained in the deed of trust, would be bound by the terms of the instrument.

We are unable to see how Mrs. Stone's rights as such alleged surety were violated. She was bound by the terms of her contract to the same extent as any other obligor would have been bound, under such instruments, to carry out their terms.

No sufficient showing was made, either by the pleadings or proof, that Mary S. Stone was induced to sign the note and deed of trust by the false representations and promises of Billings. She alleges that Billings gave her the distinct and positive assurance that the time would be by him extended for three years from March 1, 1894, and that she was induced to sign the papers by representations made by his agent that the note gave three years' time from the date thereof for the payment thereof, and, resting and relying completely on said assurance, she signed the papers without reading them. The note does in fact give three years' time for the payment thereof, provided no default be made in the payment of the interest and performance of the conditions

and covenants in the trust deed. Her belief that this period of three years was granted unconditionally does not alter the case. The conditions for the payment of interest, taxes, etc., were usual and reasonable,—such as are usually inserted in instruments of such character. She does not claim that any one assured her that the time given was given unconditionally, but only that she *believed* it to have been given unconditionally. She nowhere claims to be unable to read, and it was her duty to read the instruments before signing them. (*Packer* v. *Roberts*, 140 Ill. 9; *Rigdon* v. *Conley*, 141 id. 565; *Linington* v. *Strong*, 111 id. 152.) Nor can any special benefit of the provisions of the trust deed in regard to releasing certain portions of the property from the lien of the trust deed be claimed by her, over and above such benefits to him. The alleged tender of $11,000 by Stone to release out-lot 7 from the lien of the trust deed was not made until November 27, 1894,—four days after the entry of the judgment on the note and more than a month after the filing of the bill, although it is alleged in the answers to the supplemental bill that Billings was advised, a few days before the entry of such judgment, that such tender was going to be made. There is no rule of law giving to such notice of an intended tender the force and effect of an actual tender, and the actual tender, if made at all, (for there is no proof of such tender in the record,) was made when it was too late. Besides, there is no offer contained in any of the defendants' pleadings keeping the tender good or to pay the required amount. The allegations in regard to suretyship and tender were repeated in the answers to the supplemental bill and were not expunged therefrom, so that proof could have been offered on those points if defendants had desired to do so, but they offered no evidence on the subject.

It is further contended that Billings made an agreement, for a valuable and sufficient consideration, to extend the time for the payment of the semi-annual interest

to such time until Stone could obtain money to pay the same, and that he was therefore bound to make demand and give reasonable time for payment before bringing suit. If it be granted that this was a good defense, the defendants to the bill did not offer, in their pleadings or otherwise, to pay any interest whatever. They seek to use the alleged agreement as a defense to this suit, but do not offer to do equity. They ask the benefit of a conditional parol agreement without complying or offering to comply with its conditions. As the question is presented it is unnecessary to consider whether the rule of the common law that an executory contract under seal cannot be modified or varied by a parol agreement is applicable or not. Nor can we see how the collection of the $5300 by Billings from Mrs. Snell, and its application as part payment on the note of plaintiffs in error, could be availed of by them as a defense to the bill. The amount of that note constituted that much of the consideration of the note of plaintiffs in error, and when collected it was properly credited on the latter note.

We are unable to see that any error was committed, unless the court allowed an excessive charge for solicitors' fees under the provision in the deed of trust providing for the allowance to the complainants of reasonable solicitors' fees to be fixed by the court. The complainants offered testimony to the effect, as testified to by one witness qualified to speak on the subject, that "the sum of $7500 would be a reasonable, usual and proper charge," and by another that "from $5000 to $10,000" would be such reasonable and usual charge in such cases. No evidence was offered on the subject whatever by the defendants, but the question seems to have been presented to the court below by exceptions to the master's report as to whether or not the solicitors' fees were the usual and customary charges for such services. While the amount involved was large and the lots and tracts of land embraced within the deed of trust were numerous, and the

labors and responsibilities of counsel considerable, still we are of the opinion that, under provisions of this character for the payment of attorneys' and solicitors' fees, such large and apparently excessive amounts should not be allowed without careful investigation by the court and full proof that the amount is the usual and customary charge. Such proof is necessary before the court can comply with the instrument providing that the fees shall be fixed by the court. One of the witnesses in the case at bar fixed the amount at "from $5000 to $10,000." There is too wide a difference between these two amounts to furnish any very safe rule upon which to base a decree. Litigants have the right to expect that members of the bar will not demand, and that the courts will not allow, oppressive or excessive charges, which being demanded by opposing counsel under stipulations of this character, generally contained in mortgages, for "reasonable solicitors' fees to be fixed by the court," may often, as well said in the Appellate Court, amount to obnoxious penalties. The sum of $500 had been allowed as attorneys' fees in entering the judgment at law upon the warrant of attorney to confess judgment, which made the total amount allowed in the two proceedings $8000. Inasmuch, however, as the solicitors for the complainant have offered in this court to remit from such allowance of solicitors' fees the sum of $4024.82, which, as stated by them to the court, is the amount of the deficiency decree entered in the cause after sale, it will not be necessary to reverse the decree, but the same is affirmed in all respects, except as to the amount thus remitted. The *remittitur* is allowed, and the judgment of the Appellate Court and the decree of the trial court are affirmed, except as to the amount remitted as aforesaid. The defendants in error will pay the costs in this court.                *Judgment affirmed.*