**H. C. Hammer et al., Appellees, v. Charles W. Sanders
et al., Individually and as Copartners Doing Busi-
ness as Sanders-Fye Drilling Company, Appellants.**

**Gen. No. 46,470.**

First District, First Division.
June 20, 1955.
Released for publication July 21, 1955.

Brundage & Short, of Chicago, for defendants-appellants; Charles F. Short, Jr., and Narcisse A. Brown, both of Chicago, of counsel.

Schwartz & Cooper, and Leon M. Despres, all of Chicago, for plaintiffs-appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

This is a consolidation of three suits at law brought by each of the three plaintiffs, respectively, seeking a rescission of various transactions between them and defendants for alleged violations of the Illinois Securities Act (Ill. Rev. Stat. 1953, ch. 121½, sec. 97 et seq. [Jones Ill. Stats. Ann. 13.02 et seq.]) and the Federal Securities Act of 1933 (Title 15, Ch. 2A, Par. 77a et seq.). Defendants filed counterclaims for the plaintiffs' proportionate share of the cost of equipping and maintaining certain oil wells. The transactions grew out of oil drilling operations in southern Illinois and Indiana. Motions for summary judgments were filed by plaintiffs and defendants. The trial judge denied defendants' motions and allowed those of plaintiffs. He likewise denied defendants' motion in arrest of judgment and directed execution to issue forthwith. Defendants appeal.

For an understanding of the facts and issues involved we summarize the salient portions of the record. Defendants are copartners in the firm known as Sanders-Fye Drilling Company, with offices in Olney, Illinois. The complaints consolidated herein are in all respects identical except for the allegations relating to the proportionate share of the respective working interests and amounts paid by each of the plaintiffs. They allege that the defendants, through Paul W. Heller or Lenn Franke, offered for sale and sold to plaintiffs the respective oil and gas lease interests described in the complaints; that defendants issued to plaintiffs certain instruments evidencing the respective interests of plaintiffs in the oil and gas leaseholds, upon receipt by defendants from plaintiffs of the amounts of money listed in each of the complaints; that these instruments and the interests in oil and gas leases represented and evidenced thereby were securities in Class D, under the Illinois Securities Law; that the right to sell or offer for sale these interests was not authorized by the Securities Law of the State of Illinois, and that such

action constituted violation of the Illinois Securities Law; that about January 7, 1953 plaintiffs elected to declare void the purported sales of the securities, and on said date each of the plaintiffs sent to defendants letters electing to declare the sales void and tendering back to Sanders-Fye Drilling Company the interests in oil leases and asking that each of the defendants, severally and jointly, pay plaintiffs the total amount of the cash consideration involved. The letters further demanded payment, threatened to sue and prohibit defendants from binding plaintiffs for any expenses whatsoever in connection with the maintenance of the oil wells. The second count of the complaints reiterated the foregoing allegations, claiming violations of the Federal Securities Act of 1933, and a cause of action based thereon.

In their answers defendants denied that the instruments referred to in the complaint constituted oil and gas lease interests, with certain exceptions, denied that those instruments were sold to plaintiffs, but stated that they are contracts for the drilling of oil wells on the various described properties, and that in each instance the stated monetary consideration was paid for the drilling of an oil well; that in most instances the actual drilling had commenced prior to the execution of the documents and was based on oral agreements to pay a proportionate share of the cost of drilling. It is further averred that plaintiffs and defendants expressly agreed that the assignment of a working interest in the properties was to be made upon the drilling of a commercially productive well. Defendants denied that any of the instruments constituted interests in oil or gas leases or securities within the contemplation of the Illinois Securities Act.

As the first affirmative defense the answers allege that plaintiffs asked defendants if they could join with them in various oil drilling operations, and that they became associated in May 1952 for the purpose

of creating a joint venture to drill oil wells, that plaintiffs were to pay their proportionate share of the drilling cost of each well, the location of which was to be determined by the various parties to the agreement, with the actual drilling operations to be under the supervision of defendants; that defendants agreed to assign to plaintiffs a proportionate share of the lease on the property on which the well was to be drilled in the event that a commercial well was discovered, the proportion of the lease to be assigned to each to be determined by reference to the proportion which his respective share of the drilling costs bore to the total drilling expenses. Defendants further allege that all monies paid by plaintiffs to defendants during 1952 were reported in the respective Federal income tax returns for the plaintiffs in that year as having been expended for drilling and development costs, and no portion of these monies is shown to have been expended for acquisition costs. It is further alleged that with the exception of the oil and gas property described in certain exhibits attached to plaintiffs' complaints defendants did not sell, assign, transfer or convey to any of the plaintiffs an interest in any oil or gas lease; and that with those exceptions plaintiffs have received nothing from defendants which can be tendered back to them.

As the second affirmative defense it is alleged that the lease covering the various properties was executed by the landowner to defendants, and that with the exception of the property described in the aforementioned exhibits no interest therein was ever sold or transferred. It is alleged, in the alternative, that plaintiffs were engaged as a part of their respective business in purchasing and holding gas and oil leases and fractional interests thereof, and that they were associated together as copartners in purchasing and hold-

ing such leases; and that, should the instruments be construed as securities they cannot, as plaintiffs contend, be designated as Class D securities, but must be considered as Class B securities, and therefore exempt from the provisions of the Illinois Securities Act.

As an additional affirmative defense it is alleged that the total number of individuals participating in these ventures, including all defendants and plaintiffs, was seventeen; that participation by plaintiffs was initiated by them; and that all participants in these transactions were residents of Illinois. In their counterclaim defendants seek to recover from plaintiffs their share of the cost of equipping and maintaining the wells developed.

The motions for summary judgments filed by each of the plaintiffs had in support thereof affidavits and the complaints of the plaintiffs, as well as the exhibits attached thereto, the affidavits stating in substance that the allegations of the complaints are true, and that the exhibits are correct photostatic copies. The affidavits state that the plaintiffs met O. R. Thoureen, who was introduced as one of the partners in Sanders-Fye Drilling Company; that a conversation ensued in which plaintiffs stated that they were dissatisfied "with the way things are going"; that they felt they should see the principals of the drilling company; that Lenn Franke guaranteed the last well unequivocally but that the well was dry, and they wanted to know what defendants were going to do about it; that Thoureen said he was sorry about that, but that Franke should not have guaranteed the wells; that he would like to do something to make the plaintiffs feel better, and that he could offer a percentage interest in three going wells for $2,000 which was the defendants' cost; that plaintiffs told Thoureen they would not be interested in any new investments unless defendants

351

made good on the old ones; whereupon plaintiffs Morris Norian and Hammer each purchased one-sixty-fourth ($\frac{1}{64}$th) interest in two leases and a five-one-hundred-twenty-eighth ($\frac{5}{128}$th) interest in another for $2,000. The affidavits further state that plaintiffs had agreed to pay reasonable attorneys' fees, and further affidavits were filed by the respective attorneys setting forth the amount of work done and their respective opinions as to the amount of fees involved.

The motion for summary judgment filed on behalf of defendants had supporting affidavits, as well as excerpts from the depositions of the plaintiffs, and also copies of income tax returns filed by plaintiffs during the years in question. An affidavit of Thoureen sets forth his version of the conversation related in the affidavits of the plaintiffs and is diametrically opposed to the factual averments contained therein; it relates in substance that these were drilling ventures with the participants sharing proportionately in the drilling and equipping, with the exception that Sanders-Fye retained a one-fourth interest in the proceeds of all wells drilled, and that all parties, including Sanders-Fye, participated in the equipping of the wells; also that the only time an assignment was made was in the event a producing well was discovered. Franke's affidavit likewise contains a conflicting factual recitation of the conversations related in plaintiffs' affidavit, and sets forth in effect that this was a drilling venture, capital expenses being incurred only in the event of producing a commercially desirable well. The income tax returns of Morris Norian and Hammer disclose that the transactions in question were described as oil venture intangible drilling costs, drilling dry holes at various locations in southern Illinois and Indiana. The entire cost of drilling was deducted as a business expense. Each of the plaintiffs reported in his income

tax returns that he was in the business of oil opera-
tions, with the exception of Hammer who described it
as oil exploration. This was evidently done as a basis
for these deductions.

The judgment order entered by the court provided
that Hammer recover from defendants the sum of
$40,328.18, that Morris Norian recover the sum of
$31,279.86, that Richard Norian recover the sum of
$6,988.36, and that consideration of the matter of plain-
tiffs' reasonable attorneys' fees be reserved. Included
in the amount of these judgments are all monies paid
by plaintiffs for drilling costs, for equipping wells
and for the purchase of interests in producing wells.
No tender has been made by any of the plaintiffs at
any time of any of the monies received by them from
the sale of oil by the producing wells in question, and
no attempt has been made in any manner to place the
defendants in the position they formerly were in prior
to the drilling of the dry holes in question. As stated,
the Federal income tax returns of plaintiffs disclose
that they deducted as oil operators all the drilling ex-
penses as operating expenses of an oil venture; and
these same dollar amounts so deducted for tax pur-
poses are included in the judgment, predicated on the
theory that they are payment for securities.

The basic issue in this litigation arises out of the
respective contentions of the parties as to the inter-
pretation of certain exhibits attached to the complaint.
Plaintiffs of course contend that the instruments at-
tached as exhibits are securities within the meaning
of the act, and their suit is predicated on that conten-
tion. Defendants take the position that they are not.
These exhibits are form leases, identical except for
the filling in of certain blanks, and because of their
importance in the determination of the issues involved,
we set forth an exact copy of the form used:

■■■■■■■■■■■■■■■

"Sanders-Fye Drilling Co.
Contractors-Oil Producers
 Lamkin Building
 Olney, Illinois

 Date....................
 Re.....................
 .....................
 County State

"Dear Sir:

"This letter will confirm our understanding regarding your acquisition of an interest in leases on property as set forth below.

"We will assign to you an undivided ... working interest, under oil and gas leases on a block of ... acres, located in ... County, ..., for the sum of $....

"We agree to commence or cause to be commenced, upon the leasehold estate described above, the drilling of a well for oil and/or gas, to diligently prosecute the drilling of same and to test all possible oil formations encountered to a depth of approximately . . . feet, unless oil or gas in commercial quantities is discovered at a lesser depth, for the sum of $ . . ., which is your share of the drilling cost of this well. We will plug the well should it be a dry hole.

"In the event of a producing well, it is understood and agreed that, in addition to the amount as set out above, you will pay your proportionate part of the casing, drilling in expense, and for all equipment necessary to complete the well, as well as your proportionate part of the monthly operating expense, upon receipt of invoice. It is also understood that for any additional wells that might be drilled, you will pay your proportionate part of all costs, which costs may include the normal drilling profit of Sanders-Fye Drilling Company.

354

"It is agreed that each individual co-owner retains the right to revoke at will the operator's power to sell such co-owner's oil and also denies the operator the power to enter into any contract beyond the minimum needs of the industry under the circumstances and in any event in excess of one year.

"It is also agreed that you are purchasing this interest for investment purposes only without any present intention of re-selling this interest.

"If this is your understanding of our agreement, kindly signify your acceptance by signing in the space provided below and return one copy to this office.

"Very truly yours,
Sanders-Fye Drilling Company,
By . . . . . . . . . . . . . . .
Partner.

"Accepted

. . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . ."

In every instance the dollar amount included in the second and third paragraphs was the same. Although in terms the instrument would appear to call for two equal payments, only one payment was made in each instance.

Plaintiffs allege and take the position that each of the transactions with defendants constituted an assignment of a working interest through the media of the letters in question. In each complaint there is a table setting forth the date of the purported sale, the instrument exhibit number, invoice exhibit number, the date of payment, and the amount paid. Based upon these tables, the contention of plaintiffs is that the amount of money set forth in each of the letters was paid solely for the working interest and not for the drilling expense, and in support thereof they rely upon the paid invoices. The tables show the amount of

money spent for equipping the wells, and in several other instances the amount expended for drilling expenses. When compared to the exhibits to which the tables relate, it is apparent that the amounts spent for drilling shown in this table are for additional drilling costs. An examination of the table indicates that some of these securities relate to a commercially productive well discovered through the drilling on property involved, and several dry holes. As to the producing well, title to the interests of the plaintiffs remains in their respective names. They have been and are now receiving monthly checks from the oil companies from the sale of oil produced thereon. No tender has been made of a reassignment of the working interest by plaintiffs to defendants, nor had tender been made either of the checks received from the oil companies or of an amount equalling the sum total of these checks. As to the dry holes, no assignment has been made by plaintiffs to defendants of their interests in these properties, nor has any formal disclaimer of plaintiffs' interest to these properties been tendered. No attempt of any kind has been made to place defendants in the position they were in prior to the transactions.

The third category appearing from an examination of the table of alleged securities includes those interests in the producing wells sold to plaintiffs at defendants' cost which remain in the names of the plaintiffs, no reassignment of these interests having been tendered. The checks from the oil companies purchasing this oil have been received by plaintiffs without being tendered to defendants, or any amount equal thereto.

We think defendants' contention that the first and third categories deal with assignments to plaintiffs of interests in oil in place and the rights thereto and thus comprise an interest in real estate, is sound. It was so held in Miller v. Ridgley, 2 Ill.2d 223, and Watford Oil & Gas Co. v. Shipman, 233 Ill. 9. The

356

second category involved a promise to make such an assignment if oil were found, and of course whatever interest plaintiffs had in these leases became extinct when the dry holes were drilled. Watford Oil & Gas Co. v. Shipman, 233 Ill. 9. Accordingly, it was incumbent upon plaintiffs to tender reassignments by deed to the real estate, or by other formal instruments, and also interests to the right to enter and prospect for oil on the land which became extinct by the discovery of dry holes. The Securities Act (Ill. Rev. Stat. 1953, ch. 121½, par. 132 [Jones Ill. Stats. Ann. 13.48]) permits rescission only upon tender to the seller or in court of the securities, and Title 15, Chapter 2A, Paragraph 77l, U. S. C. A., of the Securities Act of 1933 permits the recovery of the consideration paid for such security sold in violation of the act, "less the amount of any income received thereon, upon the tender of such security. . . ." Based upon these statutory provisions of the State and Federal acts, the position of defendants is that if securities were sold, the nature of the securities required a reassignment of the interest sold, or disclaimers of any interest, and in order to meet these requirements it was necessary also to repay all benefits received thereunder. In accordance with the authorities cited by defendants, any assignment must restore defendants to the status quo existing prior to the transactions. On oral argument plaintiffs contended that they had made sufficient tender. Defendants point out that there are only two places in the entire record which deal with the subject: one in that paragraph of the complaints which alleges that plaintiffs have heretofore tendered to defendants the interests and securities purportedly sold to plaintiffs, and that plaintiffs now bring into court and tender to defendants said interests and securities; despite this allegation, no actual tender was made in court, either before or after judgment. The only other mention of tender is in an exhibit attached to the com-

plaints, which is a letter sent by plaintiffs to defendants, enclosing photostatic copies of the instruments attached to the complaints and the paid invoices, which states: "I hereby tender back to Sanders-Fye Drilling Company the interests in oil leases which you disposed of to me." Quite obviously, this is no tender of the interests in real estate formally assigned by deed to the plaintiffs and recorded in the counties wherein the properties are located. Furthermore, no mention is made of the monies received by plaintiffs from the oil companies purchasing the oil from the producing wells in question. The statute involved provides that "every sale and contract of sale made in violation of any of the provisions of this Act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery." (Ill. Rev. Stat. 1953, ch. 121½, par. 132 (1) [Jones Ill. Stats. Ann. 13.48, subd. (1)].) Illinois courts have consistently interpreted the mandatory requirements of tender under the foregoing provisions of the statute to be an absolute condition precedent to recovery. Glen v. Dodson, 347 Ill. 473, and cases cited therein; and the case of Campbell v. Degenther, 97 F. Supp. 975, is to the same effect with reference to the Federal provisions. In the case at bar plaintiffs are attempting to retain their interests in the producing wells, together with the income therefrom, at the same time that they are seeking to recover the money expended in drilling and equipping the producing wells, plus the drilling of dry

358

holes; and, as already stated, no attempt was made to tender a reassignment of their interests in either the producing wells or the dry holes. See Babcock v. Farwell, 245 Ill. 14, wherein plaintiff alleged that she was unable to return the value of the stock received from the defendant in settlement, and wherein the court held the inability of the party to restore the consideration did not release him from the necessity of doing so, nor was it sufficient to set off the amount against what was claimed from the other party.

 We hold that plaintiffs failed to make a lawful tender, therefore cannot recover, and that this defect cannot be cured after judgment because it is then too late to attempt to restore the consideration in order to comply with the theory of rescission enunciated in the statute. Stone v. Billings, 167 Ill. 170; Roggenkamp v. Marks, 299 Ill. App. 209. In the circumstances defendants' motion in arrest of judgment should have been allowed and their motion for summary judgment granted.

 These suits were instituted on the theory that the exhibits heretofore set forth are securities within the meaning of the act. Although it is true that they contain language from which it might be inferred that the dollar amount was paid for an assignment of an undivided fractional working interest in an oil and gas lease, nevertheless the identical dollars are shown in the same instrument to be for the respective plaintiffs' share of the drilling cost of an oil well. It was held in Illinois Nat. Oil & Gas Co. v. Sinclair, 373 Ill. 581, that in the oil industry the phrase "working interest" has come to have the accepted meaning that an assignment of a three-fourths working interest is the assigning of three-fourths of the portion of the oil and gas that may be produced from the premises after the royalty for the share paid to the landlord is first deducted. Giving the phrase "working interest" this accepted meaning, the letter exhibits clearly state that

359

plaintiffs were paying their proportionate share of the drilling cost of the well, and if one were discovered they would receive their proportionate share of the oil in place which would then be produced. Accordingly, defendants did not actually assign by formal instrument the plaintiffs' interest in the dry holes, since, it having been determined that no oil could be produced, there was no "working interest." Watford Oil & Gas Co. v. Shipman, 233 Ill. 9. This interpretation of the letter exhibits is supported by O. R. Thoureen's affidavit in support of defendants' motion for summary judgment, wherein he stated that he told plaintiffs that "When a lease is obtained on property which, according to geological reports and surveys, has an oil potential, an estimate is made of the cost of drilling a well to the depth at which it is believed the oil lies. Individuals are then contacted who are interested in oil operations, and an association is formed, by the terms of which each individual enters into a contract to pay a certain proportion of the estimated drilling costs. . . . The Sanders-Fye Drilling Company does not sell interests in the leases acquired by it, but in the event that a producing well is discovered, Sanders-Fye then assigns a proportionate interest in the lease to each participant so that payments of oil royalties may be made directly by the purchaser to the participant." Of course plaintiffs, in their counteraffidavits, deny that Thoureen had told them the foregoing, but they did not deny that he truthfully stated the procedure or plan followed in the industry. Certainly no sale of anything was made on the dry holes drilled by defendants; plaintiffs paid their proportionate share of the money required to pay defendants for their services in drilling the wells. Lindemulder v. Shoup, 253 Mich. 679, 242 N. W. 807, presents an analogous situation. In that case plaintiff alleged that defendants induced him to buy an interest in the stock of a corporation which was to be formed for the purpose of ac-

quiring oil leases, contending that this was in violation of the Michigan blue sky law, but the court held that the parties entered into a joint venture for the purpose of acquiring oil leases, and that approval of the securities commission in such circumstances was not necessary. The several Federal income tax returns for plaintiffs for the year 1952 corroborate this theory. Morris Norian claimed a deduction for intangible drilling costs in an oil venture resulting in drilling dry holes in various locations in southern Illinois and Indiana, totaling a loss of $36,304.28, and H. C. Hammer claimed a deduction for "Intangible drilling and developments costs . . . Oil Exploration" amounting to $35,856.02. If these transactions were investments or purchases of securities within the meaning of the Illinois and Federal Securities Acts, plaintiffs could not claim and receive a deduction for these drilling expenses. Both Hammer and Morris Norian had judgment in this proceeding in the respective amounts of $40,328.18 and $31,279.86, notwithstanding the deductions claimed as expenses; and it seems to us that their conduct in claiming in tax returns that the amounts involved herein were paid for drilling expenses is inconsistent with their present position in claiming that the amounts were paid for the "securities." We have reached the conclusion that these exhibit letters are not securities within the meaning of the act but, rather, constitute contracts defining the rights of the parties in a joint venture for the purpose of acquiring oil leases.

In view of these conclusions, other questions raised need not be considered. As already indicated, defendants' motion in arrest of judgment should have been allowed, and their motion for summary judgment granted. Accordingly, the judgments entered against defendants are reversed, as is the order denying defendants' motion for summary judgment, and the cause is remanded with directions that the court enter judgment for defendants.

■■■

Judgments against defendants reversed: order denying defendants' motion for summary judgment reversed: cause remanded with directions.

BURKE, P. J. and NIEMEYER, J., concur.