Sidney Foreman, and Ruth Foreman, Appellees, v. Henry K. Holsman, William T. Holsman, H. G. Croll, L. E. Adams, Jr., and Trust Company of Chicago, Appellants.

Gen. No. 46,686.

First District, Third Division.

February 23, 1956.

Released for publication March 29, 1956.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, for Trust Company of Chicago, appellant; Vernon M. Welsh, and Don H. Reuben, both of Chi-

cago, of counsel; Horace A. Young, of Chicago, for H. G. Croll, and L. E. Adams, Jr., appellants; Madigan and Thorsen, of Chicago, for Francis Tyler Pierce, intervening petitioner-appellant; Robert Thorsen, of Chicago, of counsel.

Moody, Foster & Barrett, and Crowley, Sprecher and Weeks, all of Chicago, for appellees; Edward W. Barrett, and Robert A. Sprecher, both of Chicago, of counsel.

JUDGE KILEY delivered the opinion of the court.

This is an action under Section 37 of the Illinois Securities Act of 1919 as amended (Ill. Rev. Stat. 1951, Chap. 121½, Section 97 (1)) to recover an investment represented by a trust certificate allegedly sold in violation of the act. The issues were referred to a master in chancery who found for plaintiffs and recommended a decree in their favor. The chancellor approved the master's report and entered a judgment, according to the recommendation, for $6,000 plus $1,500 attorneys' fees. Defendants have appealed.

The Community Development General Trust, referred to herein as the General Trust, was established for the declared purpose of sponsoring low cost housing developments. The means used was the creation of special trusts for specific projects. On January 23, 1950 the Jackson-Laramie Special Trust, referred to herein as the Special Trust, was established for a development on the West Side of Chicago. On October 27, 1950 plaintiffs signed a Mutual Ownership Application and deposited $100 earnest money with defendant Adams. On November 3rd plaintiffs were notified in a letter from the Special Trust Service Agents, by defendant Croll, that their application for mutual ownership and a lease had been approved. On November 10, 1950 plaintiffs signed a Mutual Ownership Agreement and gave Croll a check for $6,000, taking back the earnest money. June 12, 1951 Certificate Number

Five for 60 shares of beneficial interest in the Jackson-Laramie Garden Homes Mutual Ownership Trust was issued to plaintiffs by defendant Trust Company as trustee.

The Special Trust development contemplated 352 apartments at a cost of $4,200,000. Approximately $600,000 in certificates were issued for interests in the Special Trust and, of these, certificates of the value of about $140,000 were used to acquire the land. Difficulties arose in the development of the project which eventuated in the bankruptcy of the General Trust and the bankruptcy of defendants Holsmans' architectural firm, prime promoters of the General Trust housing scheme.

Plaintiffs learned that the contemplated buildings were not proceeding beyond foundations. They consulted an attorney who discovered the certificates which were issued had not been registered under the Illinois Securities Act. This suit followed a written demand for the return of plaintiffs' money.

One of the contentions made in this court by defendants is that plaintiffs extinguished their right of action under the Illinois Securities Law by releasing defendants from liability.

In the Mutual Ownership Agreement signed by plaintiffs on November 10, 1950, there appears in the second paragraph the following:

"WHEREAS, I have examined the Trust Agreement for, and desire to participate in the mutual development and ownership of said property according to the said Trust Agreement, on the condition that inasmuch as said Trust, its officers and agents, and the undersigned and others are joining only in the acquisition, development and management of real estate they hereby release each other from the provisions of the Illinois Securities Act;"

In the certificate which was issued to plaintiffs June 21, 1951 there appeared the following paragraph:

319

■

"Inasmuch as the holder of this certificate and like certificates and the issuer and its officers and agents, and the Managing Trustees and their agents, have a mutual interest in the welfare of the Trust in consideration of and as a condition of issuance of this certificate, they hereby release each other from any requirements of, or liability under, the Illinois Securities Law."

■ The question is whether these provisions were effective to preclude plaintiffs from recovery in this action. Defendants' answer pleaded the "release." The master found that the purposes of the Illinois Securities Act precluded prior waiver of liability thereunder and that "an attempt to waive" was against public policy. We think that the decision of our Supreme Court in Cerny-Pickas & Co. v. C. R. Jahn Co., 7 Ill.2d 393 is decisive of the question and that our opinion must be that the release was effective to bar plaintiffs' action under Section 37.

In the same case this court in reversing a judgment, in favor of a lessee in a lessor's suit for damages from fire, held because of considerations of public policy, that a lease could not be construed to exempt the lessee from liability for its negligence in violating two fire prevention ordinances of the City of Chicago. (347 Ill. App. 397.) On retrial the lessor recovered and this court affirmed. (4 Ill.App.2d 164.) The Supreme Court reversed and remanded with directions to dismiss. (7 Ill.2d 393.) It held that the lease construed as a whole exempted the lessee from liability "for loss by fire regardless of the cause of the fire. . . ." (Page 398.)

The court said at page 396:

"provisions which relieve the lessee from responsibility for its own negligence with respect to fires have been held valid contracts between private individuals with reference to private interests and not against

320

public policy. [Citations.] That one of the grounds of negligence charged in this case was the lessee's failure to comply with the building ordinances in making alterations in the building is not, we think, of controlling significance."

The ground referred to was the violation by the lessee of the fire prevention ordinances. In the course of the opinion the Supreme Court stated that if the lease contained an express provision of exoneration, "that would be the end of the matter." (Page 396.)

Thus an exoneration from liability for negligence is valid even though the negligence arose from violation of two ordinances which are clearly fire prevention ordinances designed for public safety; one regulated the placing of gas heaters and the other required covering of plywood partitions with incombustible materials. We conclude that with greater cogency the instant release is effective where the liability exonerated arises from a statute to protect persons from loss of their money through sale of unregistered securities.

Protection of the public's safety from fire is of a higher order of public interest than protection of personal property. The lease in Cerny-Pickas was a private contract with reference to private interest involving public law. The instant transaction also involved private contracts referring to private interests involving public law. There was no express provision of exoneration in the lease in Cerny-Pickas; the instant "release" is contained expressly in the Mutual Ownership Agreement and in the Certificate. The parties in Cerny-Pickas dealt on an equal plane and the record before us does not disclose the parties were not "on a roughly equal" contracting plane. This court refused to construe the Cerny-Pickas lease to provide exoneration from liability for violating positive legal duties, because of considerations of public policy; the

321

Supreme Court thought the fire prevention ordinance violations "not of controlling significance."

We see no need of discussing at length the distinction, urged by plaintiffs, between "release-from-negligence" cases and "waiver-of-statutory-benefit" cases as plaintiffs describe them. Plaintiffs argue the public policy in each category is different.

Accepting the distinction urged as valid, for this purpose only, the instant transaction would be valid as a "release-from-negligence" case since it is not against public policy (Cerny-Pickas) and there is nothing in the record to show that the parties were not "on roughly equal bargaining terms."

■■■■ Neither would the transaction be invalid as belonging to the category of "waiver-of-statutory-benefit" cases. The remedy invoked by plaintiffs under Section 37 is "contractual in nature," Rice v. Bogert, 272 Ill. App. 292; it is based on a "theory of rescission," Hammer v. Sanders, 6 Ill.App.2d 346; rescission under Section 37 may be waived by selling the stock and keeping the proceeds, Weisbrod v. Lowitz, 282 Ill. App. 252; any sale in violation of the section is not void but voidable, Pelham v. Hopper, 302 Ill. App. 51; under Massachusetts law contracts "void at the instance of the purchaser," as in Illinois, may be affirmed or ratified, Commissioner of Banks v. Chase Securities Corp., 298 Mass. 285, 10 N.E.2d 472, 53 C. J. S. Licenses § 77; and the action is barred when the tender required is not made, Hammer v. Sanders, 6 Ill.App.2d 346.

We think the remedy is private though it may be indirectly related to the general purpose of the act. And again assuming the transaction is a "waiver-of-statutory-benefit" case we see no substantial difference from the Cerny-Pickas case. Here plaintiffs relinquished the benefit of a new cause of action created in Section 37 in the form of a rescission suit. In Cerny-Pickas the benefit is not a creation in the ordinances

of a new remedy as in Section 37, but under Illinois law the result of a violation of the ordinances is to change the common law remedy by eliminating the necessity of proving prima facie the essential common law element of negligence. The ordinances are therefore laws which confer a benefit and it and the benefit under Section 37 are both indirectly related to the common good.

The remedy under Section 37, left in control of the party complaining, can hardly be said to be for the public in any significant sense. It can hardly be either that the legislature, in leaving the choice of rescission to the purchaser, intended release would violate public policy. The legislature provided express severe penalties for misdemeanors which it defines, for violation of the act. The Federal Securities Act expressly voids waivers. There is no such provision in the Illinois Securities Act.

The Supreme Court in Cerny-Pickas has decided that agreements to exonerate from liability for negligence in violating fire prevention laws are valid. We conclude that the release in the instant case bars plaintiffs' action.

Judgment reversed.

FEINBERG, J., concurs.

LEWE, P. J., took no part.