**MT. WASHINGTON ESTATES, INC., Plaintiff**

**v.**

**BRUMICK CORPORATION, Defendant**

Civil No. 484-1973

District Court of the Virgin Islands

Div. of St. Croix

March 6, 1974

WARNER ALEXANDER, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

NICHOLS & SILVERLIGHT, ESQS., Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *District Judge*

## MEMORANDUM OPINION AND ORDER

This motion for an order confirming a foreclosure sale held by the Deputy Marshal on January 25, 1974, was heard by me on February 6, 1974. Although the file revealed no irregularities and no written objections to the sale had been received by the Court, counsel for the mortgagor argued against confirmation on the ground that a portion of the land should have been released from the mortgage lien under a provision contained in the original contract for purchase of the property. The mortgagor had demanded the partial releases prior to the institution of the foreclosure proceeding but, when they were denied, apparently pursued the matter no further. However, on the eve of the foreclosure sale, counsel for the mortgagor instituted a separate action seeking specific performance of the release obligation by the mortgagee. The mortgagor did not attend the foreclosure sale (although his counsel was present), nor did he object to the sale when it was held. Thus, the Court is faced at this late stage of the proceeding with a potentially meritorious objection by the mortgagor to the confirmation of the sale insofar as the land covered by the release clause is concerned.

The initial question is whether I can consider the mortgagor's objections at all. Counsel for the mortgagee argues persuasively that, by his inaction, the mortgagor has waived his right to raise the issue of partial releases. The mortgagor's attorney, in an argument which recalls my law school days, points out that equity regards as done that which ought to be done and that, consequently, I should view the case as though the mortgagor had made timely objections to the foreclosure and sale. The mortgagee's response, I suppose, would be: vigilantibus, non dormientibus, subvenit equitas. While it would be correct so to note that equity aids the vigilant and not those who slumber on their rights, I would have to look more closely at the

case to determine if the delay in raising the issue resulted in any substantial prejudice to the mortgagee. It would seem that, so long as the mortgagor's period for redemption is not extended and the mortgagee is not put to the expense of another foreclosure sale, no significant prejudice would result from considering the mortgagor's objection at this stage. However, I hesitate to decide important questions of law on the basis of equitable maxims and therefore will expand my consideration of the question to include an examination of our statute and relevant case law in the field.

■ The relevant statute dealing with confirmation of foreclosure sales, 5 V.I.C. § 489, provides that the plaintiff in the court of execution *shall be entitled* to have an order confirming the sale "unless the judgment debtor . . . files with the clerk his objections thereto within five days after the return thereof." No objections were filed with the court within this time period. If I were to construe the five-day period as a mandatory one, entirely precluding consideration of objections presented thereafter, the inquiry in this case would be at an end. However, the question is not one of first impression in this jurisdiction and I must refer to a previous decision before I reach my conclusion. In Lucerne Investment Co. v. Estate Belvedere, Inc., 7 V.I. 275 (D.C.V.I. 1969), Judge Maris regarded the five day limitation "as directory only." The marshal's return of the sale in that case was on August 13, 1968, with objections filed February 21, 1969, more than six months late, but prior to the date on which plaintiff filed its petition for confirmation of the sale. The objection in this case was not nearly so late as in Lucerne; however, it was not made until *after* plaintiff's petition for confirmation, indeed not until the date for hearing the petition. Whether the pendency of the separate action for specific performance of the release obligation (which would have given plaintiff notice of the

mortgagor's claim) should affect the decision as to whether the objection is barred as untimely is unclear. I believe that the purpose which would have been served by a formal objection was adequately accomplished by filing the specific performance action. Therefore, because the five-day period is merely directory and plaintiff had notice of the objection before the sale, the mortgagor's failure to file it in writing with the Court within five days from the marshal's return is not fatal. The objection will be considered despite the unusual way in which it was raised.

I should note, however, that this is the exception, and not the rule. The special circumstances present in this case will seldom recur. Moreover, the relaxation of the five-day rule suggested by Lucerne is not to be relied upon generally. The objections in that case, although not within the five-day period, did precede the petition for confirmation and this consideration seems critical in arriving at the conclusion that "the interests of justice" demanded consideration of the objection.

The fact that the mortgagor's complaint will be considered in this case does not necessarily mean that it is proper as an objection to confirmation. Section 489(2) of Title 5 requires the Court to confirm the sale unless "there were substantial irregularities in the proceedings concerning the sale to the probable loss or injury of the party objecting." Under such statutory provisions objections to confirmation are normally limited to the face of the proceedings as set forth in the marshal's report. 47 Am.Jur.2d, Judicial Sales § 168. There are no such irregularities apparent on the face of the proceedings in this case. Instead the objection is one which questions the propriety of holding even a perfectly regular sale insofar as a portion of the property is concerned: that portion purportedly covered by the release requests.

■ Beyond consideration of irregularities in the sale proceedings, it is generally recognized that "a court of equity may withhold the confirmation of a sale on mortgage foreclosure if to confirm would work gross inequity." 55 Am.Jur.2d Mortgages § 668, State ex rel. Comm. of Land Office v. Schneider, 181 P.2d 975 (Ore. 1947). To confirm a sale of property over which the mortgagee should properly have released his lien would indeed work gross inequity. If the right to a release was clear, the court would be justified in refusing to confirm.

Before proceeding, however, a number of decisions should be distinguished. Courts in a number of cases "have taken the position that the entry of a decree of foreclosure with respect to a mortgage . . . containing a partial release provision terminates the right or privilege of obtaining releases under and in compliance with such provision." 41 A.L.R.3d 7 at § 18(a), p. 105. At least some of the cases supporting this conclusion involve attempts by mortgagors to gain the benefit of a release provision after foreclosure by paying a portion of the debt at that late date and demanding a release. Stone v. Billings, 167 Ill. 170, 47 N.E. 372 (1897); Gray v. H. M. Loud & Sons Lumber Co., 128 Mich. 427, 87 N.W. 376 (1901). To allow such releases, sometimes years after foreclosure, would remove all certainty in titles and grant mortgagors a perpetual opportunity to benefit by increases in the value of land. These perfectly understandable decisions are not relevant in this case where the payments which, it is argued, entitle the mortgagor to releases, as well as the demand for those releases, took place prior to foreclosure. It should also be noted that even where payment and demand come after foreclosure some cases would allow mortgagors to obtain releases up to the time of confirmation of a foreclosure sale. Marshall & Ilsley Bank v. Greene, 227 Wis. 155, 115 A.L.R. 1030 (1938). I need not go so far in this case.

Rather, I will merely hold that where the mortgagor is entitled to releases, made a timely demand for the releases[1] and the mortgagee wrongfully refused to grant them, the gross inequity which would result from confirming a subsequent foreclosure sale will be grounds for refusing to confirm the sale, at least insofar as the property covered by the release demand is concerned.

Having concluded that confirmation can be withheld under the above circumstances, it remains to be determined whether the mortgagor in this case had a right to the releases demanded and was wrongfully refused them by the mortgagee. This is a question which can best be answered by expediting the disposition of the separate specific performance action. One issue presented is whether the release provision which was fully stated in the contract for sale of the land, and only briefly referred to in the mortgage indenture,[2] continued in effect despite the failure to restate it in the mortgage. My view is that the covenant referring to releases can be read as incorporating the release provision in the sale contract, even though that contract is not attached or mentioned by name. But before this issue is resolved, I would like the benefit of the further argument or briefing which will take place in the specific performance action.

The final decision which I must make is how to withhold confirmation in order to consider fairly the mortgagor's right to releases without prejudicing the mortgagee. As no other irregularities appear from the papers in this case, the mortgagee is entitled to confirmation of the entire sale unless the mortgagor was wrongfully denied the releases requested. Therefore it would seem most equitable

---

[1] Whether a demand for releases is timely will depend on the particular release provision. The demand need not be made contemporaneously with the payment which entitles the mortgagor to the release, unless the provision so provides. Moreover, the right to a release survives a default, unless the provision provides otherwise.

[2] See Second Priority Money Mortgage, Covenant number 3.

to have the entire sale confirmed as of this date, February 6, 1974 (the date of hearing the argument as to confirmation). The Order confirming the sale, however, will specify a condition applicable only to that portion of the land in dispute—the condition being that if it shall be determined in Civil No. 68/1974, that mortgagor was entitled to have had that specified portion released from the lien of the mortgage, then the sale of that portion shall be null and void and the order confirming the sale as to that specified portion shall be vacated. The Order of Confirmation of Sale to be entered as of February 6, 1974, will then stand as an Order of Partial Confirmation of Sale. If, however, it shall be decided in Civil No. 68/1974 that the mortgagor had no right to the release of that portion of the mortgaged property in dispute, then the Order of Confirmation of Sale dated as of February 6, 1974, will stand as a confirmation of the entire tract of land sold at the foreclosure sale. The bid price in either event (being the amount of the judgment as well as the sale bid) shall be the price accepted by the Marshal, even though the mortgagee, as the successful bidder, shall actually receive less land from the sale as a result of the order being reduced to an Order of Partial Confirmation.[3]

ORDER OF CONFIRMATION OF SALE

(As of February 6, 1974)

In conformance with the above Memorandum Opinion, it is hereby ORDERED:

(1) Mortgagee's motion for confirmation of the January 25, 1974, foreclosure sale is hereby granted nunc pro tunc as of February 6, 1974, and such sale of the entire

---

[3] Since the Mortgagee's bid at the auction foreclosure sale was a bid "for the debt" and not one resulting from competitive bidding nor one based on a realistic present market value, this does not work an inequitable result to the Mortgagee.

tract is hereby confirmed pursuant to the bid price accepted by the Marshal. However, in the event that, in Civil No. 68/1974, it shall be determined that the portion of the property sold which mortgagor alleges should have been released prior to the sale, should have been so released, then this Order of Confirmation of Sale shall be vacated as to that released portion, more specifically described as follows:

Plot 49 (0.5070 U.S. acres) ; Plot 50 (0.5025 U.S. acres) ; Plot 77 (0.5025 U.S. acres) ; Plot 76 (0.5252 U.S. acres) ; Plot 73 (0.5000 U.S. acres) ; Plot 74 (0.5000 U.S. acres) ; Plot 75 (0.4889 U.S. acres) of Estate All For the Better as shown in P.W.D. Drawing No. 2863 entitled "Subdivision of Remainder of Estate All For The Better" dated February 19, 1969, together with the right in the Mortgagor and any subsequent owners to use all roadways and rights of access as shown on said P.W.D. Drawing No. 2863.

The remainder of the land shall be confirmed as having been sold to Mortgagee at the bid price accepted by the Marshal. The period of redemption shall run from the date of February 6, 1974;

(2) In the event that, in Civil No. 68/1974, it shall be determined that the Mortgagor is not entitled to a release of the land in dispute, then this Order of Confirmation of Sale shall stand effective and unconditioned as to the entire tract sold;

(3) The lis pendens placed on the entire property in connection with Civil No. 68/1974 shall be limited to that portion of the property involved in the action, to wit:

Plot 49 (0.5070 U.S. acres) ; Plot 50 (0.5025 U.S. acres) ; Plot 77 (0.5025 U.S. acres) ; Plot 76 (0.5252 U.S. acres) ; Plot 73 (0.5000 U.S. acres) ; Plot 74 (0.5000 U.S. acres) ; Plot 75 (0.4889 U.S. acres) of Estate All For The Better as shown in P.W.D. Drawing No. 2863 entitled "Subdivision of Remainder of Estate All For The Better" dated February 19, 1969, together with the right in the Mortgagor and any subsequent owners to use all roadways and rights of access as shown on said P.W.D. Drawing No. 2863; and

(4) That both parties hereto, being the same parties involved in Civil No. 68/1974, are hereby requested to hold a pretrial conference of that action with the Court as soon as practicable and by no later than March 22, 1974.