**STACK'S, Plaintiff**

v.

**WILLIAM GORDON, Defendant**

Civil No. 545C/1976

Territorial Court of the Virgin Islands

Div. of St. Croix: Christiansted Jurisdiction

January 21, 1981

ELLEN G. DONOVAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

TODD H. NEWMAN, ESQ., Christiansted, St. Croix, V.I., *for defendant*

FINCH, *Judge*

## MEMORANDUM OPINION

### I. INTRODUCTION

This was originally a debt action which has evolved into an execution proceeding presenting a procedural question of first impression in this jurisdiction. The major issue presented here is whether a judgment debtor who defaults on an underlying claim is entitled to have the execution sale of his property set aside, after the statutory redemption period has expired, because he was not served with the Motion for the Order Confirming the Sale of his property. For the reasons which follow, this Court decides that such a judgment debtor is not entitled to the relief he requests.

### II. FACTUAL BACKGROUND

The material facts, based upon the testimony adduced before this Court at a supplementary hearing, the exhibits received in evidence, and upon the facts stipulated by counsel, are as follows:

On December 1, 1976, Stack's, the plaintiff herein, after having made several unsuccessful attempts to collect on a contract debt, obtained a valid default judgment against William Gordon, the defendant herein (hereafter referred to as "Gordon"). That default judgment was in the amount of $3,697.04 exclusive of interests, costs, and attorney's fees. Thereafter, Attorney Kenneth A. Rosskopf (hereafter referred to as "Rosskopf"), who was then representing Stack's, obtained a writ of execution which was served on Gordon on April 14, 1977. The following day Gordon met with Rosskopf, and paid him $500.00 on the account. At that time, Gordon promised to make monthly payments of $500 and to have the balance paid in full by December, 1977. Rosskopf, relying on Gordon's promises, then instructed the marshal to withhold any action on the outstanding writ of execution and the marshal returned the stated writ to the court after it expired.

Gordon failed to pay as he had promised and subsequently, after having been duly served with a Municipal Court Rule 52 Order,[1] he

---

[1] 5 V.I.C. App. IV, R. 52 provides as follows:

    Rule 52. Orders for discovery; supplementary proceedings

      (a) In aid of the judgment of execution, the judgment creditor or his successor

was compelled to come before this Court on September 8, 1977 and submit himself to an examination under oath. At the stated examination, Gordon told Rosskopf that he was applying for a real estate mortgage. The parties then entered into a stipulation whereby it was agreed that Gordon would pay Stack's the judgment amount in full within sixty days from September 8, 1977 and that pending said payment Gordon would not dispose of any of his properties not exempt from execution. On September 14, 1977, this Court entered an Order which recited the parties' stipulation and which restrained Gordon, pending satisfaction of the judgment, from disposing of any of his properties not exempt from execution.

Gordon failed to meet any part of his financial obligation to Stack's within the sixty days he had agreed to. Subsequently, on November 28, 1977, approximately twenty days after the date when Gordon should have satisfied the judgment in full as he had agreed to, Rosskopf requested an alias writ of execution from the clerk of the court. The alias writ was issued on December 20, 1977 and on January 31, 1978 a deputy marshal of the Territorial Court attached Gordon's real property located at Plot No. 111D, Estate Cane Bay, St. Croix (hereafter referred to as "Plot No. 111D"). Notice of

in interest when that interest appears of record may examine any person, including the judgment debtor in the following manner:

He shall present to a judge of the municipal court a petition verified by the oath of such person or his agent or attorney, in which he shall state the amount due on such judgment and his belief that such judgment debtor has property or other things in action over and above such property as is or may be reserved by law.

(b) Upon the filing of such petition, the judge shall make an order requiring the judgment debtor to appear and make discovery on oath concerning his property and things in action before such judge or an attorney at law of this Territory, to be designated in such order, at a time and place in such order specified.

The time and place designated shall not be changed, nor shall more than one hearing be held without further order of the court.

The rules of the Municipal Court were made applicable to the Territorial Court by a December 17, 1976 district court "Order of Adoption" executed by Chief Judge Almeric L. Christian and District Judge Warren H. Young. Said order provided in relevant part:

By virtue of the power vested in the District Court of the Virgin Islands, and in accordance with Section 23 of the Revised Organic Act, approved July 23, 1954 (48 U.S.C. Sec. 1613), the following rules governing the Territorial Court of the Virgin Islands are hereby ORDERED, ADJUDGED and DECREED:

1. The rules governing the Municipal Courts of the Virgin Islands adopted by the District Court on December 18, 1956, being Title 5 App. IV, Virgin Islands Code, as amended from time to time by the District Court, shall apply to the Territorial Court of the Virgin Islands . . .

the public auction of Plot No. 111D was duly published and posted as required by law.[2] Additionally, Rosskopf mailed a notice of the public auction to Gordon and to twelve real estate brokers on St. Croix.

On April 14, 1978 Plot No. 111D was sold by the Territorial Court Marshal at public auction. Stack's, the sole bidder at the sale, obtained Plot No. 111D for $5,380.00, the sum of the judgment inclusive of interests and costs. An appraisal which Gordon has submitted at this stage in the matter sub judice shows that in April 1978 Plot No. 111D had an estimated market value of $59,000.00.[3]

On July 10, 1978 the sale was confirmed by the Court. It is undisputed that Gordon was not served the Motion for Order Confirming Sale. Gordon testified, however, that he had received the July 10, 1978 Order Confirming Sale, but that he could not recall when he received it.

Approximately two weeks after the Court confirmed the auction sale of Plot No. 111D, Gordon met Rosskopf on a street in Christiansted. Rosskopf asked Gordon what he intended to do about the property and then told him that unless he redeemed his property, he would lose it at the expiration of the redemption period. Gordon then responded to Rosskopf:

> Obviously I'm not going to let it go, let it terminate and not negotiate for the amount of money involved which was around $5,380. I will not allow it to go for that. What do I do from here?[4]

---

[2] The notice required prior to selling real property on execution is governed by 5 V.I.C. § 484, which provides in pertinent parts:

(a) Before the sale of property on execution, a written or printed notice of the time and place of sale, particularly describing the property shall be—

(1) posted in a public place in or near the office of the clerk of the court in the judicial division or jurisdiction in which the sale is to take place; and

(2) published in a newspaper which is published in the judicial division in which the sale is to take place.

\*     \*     \*

(c) In the case of real property, such notice shall be posted for four weeks prior to the day of sale and shall be published once a week for the same period.

Pursuant to this statute, notice of sale of Plot No. 111D was published in the St. Croix *Avis* on March 8, 11, 25, and April 1, 1978 and was posted on the bulletin boards of the Clerk's Office of the District Court, the Territorial Court and the U.S. Post Office.

[3] Defendant's Exhibit C.

[4] Excerpt of Trial, pp. 3, 12.

Rosskopf then told Gordon to call his office to obtain the requisite redemption figures. On July 28, 1978, the amount necessary to redeem Plot No. 111D was furnished to Gordon by phone.

On July 10, 1979 the statutory redemption period on the sold property expired. On August 13, 1979 Gordon was served with a notice of eviction and it was then that he contacted an attorney in the matter. According to Gordon, he made some unsuccessful attempts at obtaining the money he owed to Stack's. The record does not show, nor does Gordon claim, that he ever contacted Rosskopf's office to apprise Rosskopf of any such efforts. Apparently, Gordon was under the mistaken belief that Rosskopf would contact him.

## III. DISCUSSION

In his motion to Set Aside Order Confirming Sale, the defendant seeks an order vacating the order confirming sale of July 10, 1978, or in the alternative, an order granting the defendant an extension of the expired redemption period, or in the further alternative, an equitable redemption. The defendant attacks the order confirming sale on two fronts. First, he argues that the plaintiff's Motion for Order Confirming Sale was not served on him, and therefore that he had no notice that an order would be entered confirming the sale. Secondly, he contends that the judicial sale price of $5,380 is so grossly inadequate as to justify vacating the execution sale.

As to the first objection, the defendant contends that because the period of redemption runs from the date of the order confirming sale, he was unaware of the time within which he was permitted to redeem the property. The plaintiff concedes that no such notice was sent, but argues that the defendant had actual notice that the redemption period had begun. At a supplemental hearing held on July 11, 1980, the defendant answered affirmatively when asked if he received the July 10, 1978 order confirming the sale of his property. Several weeks after that date, he met the attorney for the plaintiff and stated that he was not going to let the house go for only $5,380.00. The defendant then asked the attorney what he should do "about finding out how to redeem it." It becomes clear from these answers by the defendant that he was fully aware of the fact of the sale and the right of redemption. Yet he chose to ignore this right until well after the period of redemption had run.

Beyond the fact that the defendant had actual notice of the judicial sale and the existence of his right to redemption, it is important to note that he was served with the alias writ of execution

on April 14, 1977, the notice of the public auction, and the July 10, 1978 order confirming the sale. In light of these additional factors, the court finds the defendant's protestations of ignorance particularly unconvincing.

Under the Federal Rules of Civil Procedure, made applicable to the Territorial Court by 5 App. IV Rule 7, there is serious doubt as to whether the defendant was entitled to the notice following his judgment by default. Rule 5(a) provides that

> Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

Fed. R. Civ. P. Rule 5(a). In Lunsford v. Kaiser Gypsum Co., 516 P.2d 151 (Alas. 1973), the court was faced with the identical issue now before this court. In that case, the judgment debtors, who had defaulted on the underlying claim, complained that they had not been served with a motion for confirmation of sale. Interpreting a rule similar in all material respects to Fed. R. Civ. P. Rule 5(a), the court held that no service is required where a judgment debtor defaults on the underlying claim. Id. at 152.

The second objection raised by the defendant concerns the "gross inadequacy" of the judicial sale price. In Lucerne Investment Co. v. Estate Belvedere, Inc., 7 V.I. 275 (D.V.I. 1969), a judgment by default was entered against the defendant in a foreclosure action. At a public sale the mortgaged premises were sold for $285,000.00. The defendant objected to the sale on the grounds that there was an inadequate notice of sale, that there was a lack of competitive bidding, that the sale of the various properties in question was effected as a unit and not separately, and that the sale price was grossly inadequate. An appraisal of the parcels made some five months after the sale indicated a value of $621,000.00. The court stated that the $336,000 differential between the sale price and the appraised

183

value was strong evidence of a grossly inadequate price. Id. at 279. Furthermore, the inadequacy was aggravated by certain irregularities in the sale itself. The notice of sale offered the three widely different pieces as a unit, thereby discouraging those buyers who would have wanted to purchase only one of them and reducing the number of bidders. The sole bidder at the sale was the plaintiff, whose bid price was just below the judgment debt of the defendant. The notice also failed to describe adequately the property and its improvements. Id. at 281. The court held that the "substantial irregularities," in conjunction with the grossly inadequate price, were sufficient to justify ordering a resale.[5] Id.

■ In the present case, it cannot be denied that the judicial sale price of $5,380 was grossly inadequate. In an appraisal by Mr. R. N. Cobb, a licensed appraiser in St. Croix, the property in question was valued at $59,000 as of April, 1978. Another appraisal by the same man valued the property at $65,000 as of August 21, 1979. The sale price was therefore only one-twelfth of the appraised value a year after the sale and only one-eleventh of the appraised value at the time of the sale. These ratios are especially significant in that the sale price in Lucerne was almost forty-six percent of the appraised value.

As in Lucerne, there were irregularities surrounding the sale of the defendant's real estate. The notice of sale, for example, described the property in the following manner:

> Plot No. 111D containing 1.0724 U.S. acres more or leass [sic] of Estate Cane Bay, West End Quarter, St. Croix, as shown on P.W. Drawing No. 922, dated May 19, 1960 in St. Croix, Virgin Islands of the United States.

---

[5] Irregularities involving the proceedings of a judicial sale of real property are governed by the following sections:

Whenever real property is sold on execution the provisions of this section shall apply to the subsequent proceedings:

(1) The plaintiff in the writ of execution shall be entitled, on motion therefor, to have an order confirming the sale, unless the judgment debtor, or his representative in case of his death, files with the clerk his objections thereto within five days after the return thereof.

(2) If such objections are filed, the court shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. In the latter case, the court shall disallow the motion and direct that the property be resold, in whole or in part, as the case may be, as upon an execution received on that date.

5 V.I.C. § 489 (1967).

5 V.I.C. § 484(a) requires that "[b]efore the sale of property on execution, a written or printed notice of the time and place of sale, *particularly describing* the property shall be—posted in a public place in or near the office of the clerk of the court . . . ." (Emphasis added). What the notice failed to reveal was that there is a house on the property that was sold. The absence of any indication of improvements may well have been a cause of the absence of competitive bidding.

Several other factors that complicate this matter concern the attachment of the defendant's homestead. In the first place, a writ of execution against the property of the judgment debtor "shall require the marshal to satisfy the judgment, with interest, out of the personal property of such debtor, and if sufficient personal property cannot be found, then out of the real property belonging to him on which the judgment has become a lien as provided in section 425 of this title . . . ." 5 V.I.C. § 473. There is nothing in the return of service of the alias writ of execution that was issued on December 20, 1977 to indicate that the personal property of the defendant was insufficient to satisfy the judgment debt. Instead, the marshal attached the defendant's real property. Furthermore, 5 V.I.C. § 478 exempts "from judicial sale for the satisfaction of any liability hereafter contracted or for the satisfaction of any judgment hereafter obtained on such debt" the sum of $30,000 of the debtor's homestead.

██ Other jurisdictions have held that where a grossly inadequate price is coupled with irregularities, the sale must be set aside. In Collum v. DeLoughter, 535 S.W.2d 390 (Tex. Ct. App. 1976), the sale price for two lots was $2,000 and the actual market value was $13,500.00. Id. at 392. Numerous irregularities accompanied the execution sale, including an inadequate description of the property to be sold and lack of personal notice of the sale. The court stated that "[a]n execution sale will be set aside upon proof that it was made for a grossly inadequate price and was accompanied by irregularities which tended to contribute to the inadequacy of price." Id. In the case at bar, the description of the sale property omitted its most salient feature—the defendant's house. This, plus the absence of any competitive bidding and the appearance of the plaintiff as the sole bidder could be construed as factors contributing to the low sale price.

██ It has been held that where the execution sale price of a piece of real property is grossly disproportionate to its actual value, only

slight irregularities need be demonstrated to set the sale aside. Johnson v. Jefferson Standard Life Ins. Co., 429 P.2d 474, 475 (Ariz. Ct. App. 1967); Barker v. Young, 189 P.2d 521, 524 (Cal. Ct. App. 1948); Prudential Corp. v. Buzaman, 512 S.W.2d 85, 89–90 (Tex. Ct. App. 1974); Nance v. Currey, 257 S.W.2d 847, 850 (Tex. Ct. App. 1953). According to this view, the greater the inadequacy of price, the lesser the need to show irregularities in the conduct of the sale. Buzaman, supra, at 90.

■■ Having reviewed the case law on this issue, the court must say that it is disturbed that none of the irregularities accompanying the present case were raised by the defendant either in his memorandum of law or at the supplemental hearing. Although the court feels constrained at least to mention the possible irregularities, it does not feel obligated to decide the case on matters that were not raised. Furthermore, it would be unfair to consider objections that the plaintiff had no opportunity to respond to either in its reply memorandum or at the supplemental hearing. The only irregularity that the defendant alleges is the fact that the notice of sale was not published in a newspaper other than the local St. Croix *Avis*. This is a spurious objection, however, especially in light of the requirement of *"substantial* irregularities" in 5 V.I.C. § 489(2) (emphasis added). It is true that the court in Lucerne, supra, required publication in the St. Thomas *Daily News* and the *Wall Street Journal* as well as the *Avis*; however, the property in that case was valued, in 1968, at $621,000—ten times the appraised value here. Given the extensive real estate activity in St. Croix, the court feels that publication in the *Avis* was sufficient.

Another consideration that runs against the defendant's position is the laxity with which he objected to the sale. The plaintiff's contention that his long delay in filing his objections justifies denying the motion is well taken. In V.I. National Bank v. Tyson, 11 V.I. 323 (3d Cir. 1974), the judgment debtor failed to file any objections to a sale of certain real estate within the 5-day time limit prescribed by 5 V.I.C. § 489(1) & (2). The district court entered an order confirming the execution sale without a hearing. 11 V.I. at 327. The issue before the Third Circuit was whether the judgment debtor should have been relieved from the confirmation order despite the untimely objections. Id. Stating that she knew or should have known the particulars surrounding the conduct of the sale in time to object to it, the court added:

Judicial sales must have finality and judgment debtors may not assert untimely challenges on the basis of irregularities which were readily ascertainable before the close of the statutory period for filing objections.

Id. at 327–28; accord, Villanueva v. Daniel, 11 V.I. 537, 540 (3d Cir. 1975).

In Lucerne, supra, the court permitted the filing of untimely objections, but this was done *before* the plaintiff petitioned for confirmation of the sale. In Mt. Washington Estates v. Brumick Corp., 10 V.I. 393 (D.V.I. 1974), objections to the sale were allowed even though they were filed six months after the marshal's return of sale. Id. at 395. They were filed after the petition for confirmation of sale but before the confirmation itself.

The objections in the present case were not only filed after the confirmation, but also after the redemption period expired. This court declines to extend the time within which to file tardy objections. Over a year had elapsed between the confirmation order and the time of defendant's objections. Three months expired from the end of the redemption period. As the court in Brumick stated, consideration of untimely objections "is the exception, and not the rule. The special circumstances present in this case will seldom recur. Moreover, the relaxation of the five-day rule suggested by Lucerne is not to be relied upon generally." 10 V.I. at 396.

■ The defendant's actual notice of the Order Confirming Sale, his receipt of other notices surrounding the execution sale, his failure to point out certain irregularities, and his excessive delay in raising objections are factors that persuade the court to deny the motion.

## ORDER

For the reasons set forth in the Memorandum Opinion of even date herewith, it is hereby

ORDERED, ADJUDGED and DECREED that the Motion to Set Aside Order be, and the same is hereby DENIED.