**SANTIAGO CAMACHO, Appellant/Intervenor**

**v.**

**SYLVIA DODGE, Appellee/Defendant, EDWIN ORTIZ, Nominal Appellee/Plaintiff**

D.C. Civ. App. No. 93-234

T.C. Crim. No. 847-1990

District Court of the Virgin Islands

Div. of St. Croix

November 21, 1996

BETHANEY J. VAZZANA, ESQ., (COON, SANFORD & AMERLING, P.C.), Christiansted, St. Croix, U.S.V.I., *for Appellant*

LOLITA D'JNS DE PAIEWONSKY, ESQ., Christiansted, St. Croix, U.S.V.I., *for Appellee Dodge.*

GEORGE W. CANNON, JR., ESQ., Frederiksted, St. Croix, U.S.V.I., *for Nominal Appellee Ortiz*

BEFORE: MOORE, *Chief Judge,* FINCH and DIASE, *Judges*

## OPINION

PER CURIAM

This appeal involves the balancing of equities of a *bona fide* purchaser for value at an execution sale upon a money judgment against those of a judgment debtor who waited over eleven months before objecting to the sale of her real property by alleging certain procedural inadequacies. The Territorial Court vacated its earlier order confirming the sale and set aside the execution sale. The purchaser at the judicial sale and intervenor below, Santiago Camacho ["Camacho"], filed this appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Based upon the acknowledgment of the debt by Sylvia Dodge ["Dodge"] , appellee and defendant below, Edwin Ortiz [Perez][1] obtained a judgment on June 7, 1990, in the amount of $4,982.91 plus interest and costs. In September of 1990, a deputy marshal collected $150 from Dodge personally pursuant to a writ of execution. Joint Appendix ["J.A."] at 27. Pursuant to another writ, another deputy on May 16, 1991, attached Plot No. 122 of Estate Ruby, Queen Quarter, St. Croix, real property owned by Dodge, in a further attempt to satisfy the judgment, and returned the writ on July 1, 1991.[2] *Id.* at 29. On September 13, 1991, the Territorial Court Marshal conducted a judicial sale of No. 122 of Estate Ruby, which was sold to Camacho for $9,300, and on September 19, 1991, the Marshal filed the Certificate of Sale. *Id.* at 14. Ortiz obtained an order confirming sale dated September 24, 1991. *Id.* at 15-16. Eleven months later, on August 24, 1992, Dodge filed a "Motion To Annul Confirmation Order and to Set Aside Execution Sale," alleging several irregularities in the sale process, including that the confirmation was made without notice to Dodge and despite the knowledge of the court officers that the property was her home-

---

[1] Although a party to the action below, Mr. Ortiz did not participate in this appeal.

[2] Yet another deputy had returned another writ of execution unsatisfied on April 9, 1991, after being unable to locate any real or personal attachable assets of Dodge. Joint Appendix ["J.A."] at 28.

stead. *Id.* at 17-20.[3] Camacho was allowed to intervene in the debt action to protect his rights as purchaser at the judicial sale.

The Territorial Court held an evidentiary hearing on the motion on July 27, 1993, at which Dodge, the Territorial Court Marshal and several deputies, and Camacho testified. Before taking evidence, the court inquired whether Ortiz was present and represented by counsel, to which Ortiz responded that he did not know what he had to do with the proceeding "because I already received my pay." *Id.* at 57-58. Dodge related that she was a businesswoman, a real estate sales agent for the most recent three years, and the owner of a health food business for ten years before that. *Id.* at 87. She acknowledged the judgment in favor of Ortiz, that she had paid $150 to Deputy Marshal Yahn, and that she had made no other payments because she had been unable to work out any payment plan.

Dodge came to the marshal's office "to explain my situation" and try to get time to get the money to pay the debt. She even went back to the marshal's office after she found out that the home she was living in was going to be sold to satisfy the debt and told someone in the office that this was her home and that she had no place to go. She testified that she had earlier said this to Deputy Marshal Yahn at her home and Deputy Marshal King when he came on her job, but that no one had told her she could make a claim for a homestead exemption at the marshal's office. *Id.* at 92-96. In response to a question on redirect whether any of the marshals or Ortiz or his attorney told her to see Marshal Perez to make her homestead declaration, however, Dodge admitted that "when I spoke one time concerning my situation, they said if I can't pay all of it that I should try to see him [Perez] , but one day I had gone down to see him and they said he wasn't there." *Id.* at 114. Dodge also knew when the sale took place; Deputy Marshal Bronstroff suggested she come to the sale, but she declined because she said she was ashamed. *Id.* at 96-97. Further, Mrs. Dodge called the marshal's office about a week after the sale and found out that

---

[3]Dodge filed for relief under the bankruptcy laws four days later on August 28, 1992. The automatic stay of judicial proceedings against the debtor was partially lifted by the bankruptcy court to allow disposition of Dodge's motion to annul. *See* Order of Court Issuing a Stay, J.A. at 49-52.

her property had been sold for "something like" $9,000, although she could not remember if she actually got a copy of the order confirming sale. *Id.* at 106. The trial judge took judicial notice that there was no certificate on the motion for confirmation of sale that it had been served on Mrs. Dodge. *Id.* at 109. When Dodge filed for bankruptcy in 1992, she related that the value of the property was $50,000.[4] *Id.* at 23, 100, 108.

At the hearing, Mrs. Dodge also called the marshals as witnesses. Deputy Marshal Carl Yahn testified that he served Dodge with a copy of the writ at her home in Estate Ruby and collected some money from her. He did not tell her she had certain rights if it was her home that was going to be sold, and stated that he had received no training regarding and did not know about the right of homestead exemption. *Id.* at 63-67. Deputy Marshal Joseph King Sr. testified that he was the one who attached Mrs. Dodge's real property at the Office of Recorder of Deeds and also personally served her where she was working with the writ showing the attachment. *Id.* at 70. He did not recall Dodge telling him anything like, "but this is my home. What am I going to have to do to settle it?" If she had, "the only thing I would have told her if that's her homestead and I have this writ, get an attorney and the attorney will advise her what she's to do." *Id.* at 74. The Territorial Court Marshal, Jaime Perez, testified about his interpretation of the homestead exemption and the procedure for claiming it, stating that it is not automatic like the exemption on personal property. "It has to be requested by the defendant in the action. . . . In writing." *Id.* at 80. It is not sufficient if the defendant tells the deputy marshal that it is her home; the sale goes ahead without any recognition of a homestead exemption. *Id.* at 81-82. Recalled by Camacho, Marshal Perez testified that his records show no claim for exemption of homestead filed by Dodge. Id. at 116-17.

After argument, the court granted Dodge's motion from the bench. A written order vacating the order confirming the sale and

---

[4] Dodge testified that Farmers Home Administration and Small Business Administration held mortgages on her home at the time of the sale. She thought FHA was about $22,000 to $24,000 and SBA about $10,000. J.A. at 98. FHA filed a proof of claim in her bankruptcy case as a secured creditor for $29,730.87 plus interest. *Id.* at 33.

setting the sale aside was issued on August 12, 1993. *Id.* at 47-48.[5] This appeal followed.

## DISCUSSION

### Issues Presented

In her Motion To Annul Confirmation Order and to Set Aside Execution Sale, Dodge made no reference to a statutory or procedural basis for such relief. In his opposition to the motion, Camacho pointed out that Dodge did not assert any of the grounds allowed under Rule 60(b) of the Federal Rules of Civil Procedure for setting aside a judgment or order of the court.[6]

Despite being urged that the proper vehicle for relief was Rule 60(b), it appears that the trial court grounded its ruling on provisions of the Virgin Islands Code governing the conduct of judicial sales of real property, namely V.I. CODE ANN. tit 5, § 489, which provides as follows:

> Whenever real property is sold on execution the provisions of this section shall apply to the subsequent proceedings:
>
> (1) The plaintiff in the writ of execution shall be entitled, on motion therefor, to have an order confirming the sale, unless the judgment debtor, or his representative in case of his death, files with the clerk his objections thereto within five days after the return thereof.

---

[5] Camacho filed a motion to reconsider in the interim, *id.* at 155-57, which was denied in the court's order of August 6, 1993, *id.* at 47-48.

[6] The rules governing the Territorial Court in effect in 1993 required the practice and procedure of that court to "conform as nearly as may be to that in the district court in like causes." Terr. Ct. R. 7. Thus, the Federal Rules of Civil Procedure applied, namely FED. R. CIV. P. 60(b). We are thus bound by the interpretation of these federal rules by the United States Court of Appeals for the Third Circuit, even though these rules are being applied in a context of purely local, Virgin Islands substantive law, including the standards of review of a trial court's ruling on such a motion as set forth by the Court of Appeals in, *e.g., Virgin Islands Nat'l Bank v. Tyson*, 11 V.I. 323, 506 F.2d 802 (3d Cir. 1974). This distinction between matters of purely local law and issue of federal law is developed more fully in *Monsanto-Swan v. Government of the Virgin Islands*, 33 V.I. 138, 918 F. Supp. 872 (D.V.I. APP. Jan. 25, 1996), *appeal docketed*, No. 96-7115 (3d Cir. 1996); see HOVIC v. Richardson, 894 F. Supp. 211, 32 V.I. 336 (D.V.I. APP. 1995), *appeal dismissed*, No. 95-7381 (3d Cir. May 7, 1996).

(2) If such objections are filed, the court shall, notwithstanding, allow the order confirming the sale, unless on the hearing of the motion it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting. In the latter case, the court shall disallow the motion and direct that the property be resold, in whole or in part, as the case may be, as upon an execution received on that date.

. . . .

■ Our threshold issue is thus whether the court applied the correct legal standard in arriving at its conclusion, namely, whether 5 V.I.C. § 489 or FED. R. CIV. P. 60(b) is the correct mechanism for seeking relief from a final order or proceeding, something not addressed by the court or clearly articulated by the parties. We first conclude that Rule 60(b) is the only vehicle for granting the relief Dodge sought, and then proceed to determine whether the order appealed from can be sustained under the provisions of that rule.

**Standards of Review**

■ Our review is plenary in determining whether the trial judge applied the correct rule of law. *HOVIC v. Richardson*, 894 F. Supp. 211, 32 V.I. 336 (D.V.I. APP. 1995), *appeal dismissed*, No. 95-7381 (3d Cir. May 7, 1996). The trial court's ruling on the motion to annul and vacate is reviewable by the Appellate Division for abuse of discretion. *See Nibbs v. Roberts*, 31 V.I. 196 (D.V.I. APP. 1995); In re Barrett, V.I. BBS 91CI159A.DX2, 1995 WL 450466, (D.V.I. APP. Jan. 31, 1995). Findings of fact made in the exercise of such discretion are reviewed under a "clearly erroneous" standard. 4 V.I.C. § 33.

**Court's Use of Section 489 As Basis for Relief Was Error**

Based on the testimony at the hearing, the court concluded in its written order of August 6, 1993, "that there were several irregularities which, individually and in the aggregate, were substantial and warranted that the execution sale be set aside."[7] The judge

---

[7]J.A. at 47-48.

listed three specific irregularities: (1) Dodge "had repeatedly informed the Marshal, albeit orally, that the property upon which levy was made was her homestead"; (2) the "marshal's requirement that such claim be made in writing is not a requirement sanctioned by or properly inferred from the statute, 5 V.I.C. § 478"; and (3) Ortiz's "motion to confirm the sale was not served upon [Dodge]," nor was the order confirming sale.[8]

While the judge did not recite 5 V.I.C. § 489 as the statutory basis for vacating the order confirming sale, his reference to "substantial irregularities"[9] is consistent with the procedure under section 489 for considering objections to confirming the sale in the first instance. We hold that section 489 does not provide a mechanism for vacating an order confirming a judicial sale of real property after it has been entered, especially when eleven months have elapsed. Thus, the court applied an improper legal standard when it relied on section 489 to grant Dodge's motion.

## Analyzing the Court's Order under Rule 60(b)

We nevertheless review the record to determine whether the evidence presented by Dodge is sufficient to support vacation of the order of confirmation under Rule 60(b).

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judg-

---

[8] *Id.* Although the court purported to recognize that Camacho also had rights as purchaser, the judge nevertheless concluded that "where there is a forfeiture as here, and where there are substantial equities in favor of the judgment debtor, and where there are what I think are substantial irregularities individually and in the aggregate, that the sale really has to be set aside." *Id.* at 151-52.

[9] This language is taken directly from V.I. CODE ANN. tit. 5, § 489. If timely objection is made to the writ of execution under section 489, the court is required to confirm the sale unless there is a satisfactory showing "that there were substantial irregularities in the proceedings concerning the sale."

ment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

FED. R. CIV. P. 60(b). Of the grounds for post-judgment relief under Rule 60(b) applicable to this case, only the "excusable neglect" portion of (1) and the "misconduct of an adverse party" of (3) require discussion.[10] We examine each of the three "irregularities" upon which the judge based his order.

■ Analyzing the last of the trial court's bases first, Dodge, as judgment debtor under section 489(1), had five days within which to file her objections. Since no objections were filed, the judgment creditor, Ortiz, was entitled to an order confirming the sale under section 489(2). Even if objections had been filed, the judgment creditor was entitled to have the sale confirmed unless "it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of the party objecting." The trial judge placed emphasis on the lack of opportunity for Dodge to file any objections due to the failure of Ortiz's counsel to serve Dodge with a copy of the motion to confirm the sale. The court appears to have found that it was the motion for confirmation that started the five-day period for Dodge to file her objections and that the failure to serve her with the motion constituted one of the substantial irregularities justifying relief from the order confirming sale. We accordingly are called upon to resolve what event in the course of a judicial sale triggers the running of the five-day objection period.

The statute is ambiguous on the precise triggering event. Section 489(1) provides that the "plaintiff in the writ of execution shall be entitled, on motion therefor, to have an order confirming the sale, unless the judgment debtor, or his representative in case of his death, files with the clerk his objections thereto within five days after the *return thereof*." (emphasis added.) We look to related

---

[10] Dodge simply failed to present to the court below any evidence that she was entitled to relief from the order due to "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)" per Rule 60(b)(2).

sections for assistance. Section 489(3) speaks of the "return of the execution" as the signal for the marshal to pay the proceeds of the sale to the clerk of court for distribution. Section 492 prescribes the matters which must be contained in the certificate of sale and which also "shall be substantially stated in the marshal's *return of his proceedings* upon the writ." (emphasis added.) We adopt as the correct interpretation of section 489(1) that *"return thereof"* refers to the *return by the marshal of the sale.*[11]

In this case, the record does not contain a separate document labeled "Marshal's Return of Proceedings upon Writ of Execution" or "Return of Execution" reciting the four matters also required to be contained in the "certificate of sale." The record does contain, however, a certificate of sale which was filed by the marshal. We take the filing of this certificate of sale as the functional equivalent of the marshal's return of proceedings on the execution and hold that it is the event in the process which started the five-day period for the judgment-debtor to file her objections to the sale under section 489(1). We agree that it was error for judgment-creditor Ortiz not to serve Dodge with his motion for an order confirming sale, since she had appeared and participated in the case and acknowledged the debt, so the judgment had not been obtained by default. We nevertheless find that it was not the kind of error or "misconduct" which would justify relief under Rule 60(b).

Moreover, we are unable to find that Mrs. Dodge's delay in filing any objections resulted from excusable neglect. The record is replete with evidence that she had ample notice that her property had been attached by the marshal, knew that her property had been advertised for sale before it was sold, had been urged to attend the sale, and had been told after the sale that her property had been sold. Since Mrs. Dodge already had knowledge of the information contained in the motion to confirm, we cannot find that the failure to serve her with the motion had any causal effect on her failure to file timely objections to the entry of the order

---

[11] *See Mt. Washington Estates v. Brumick Corp.,* 10 V.I. 393, 395-96 (D.V.I. 1974) (the 5-day period for debtor to file objections to sale starts from the marshal's return of sale); *accord, Virgin Islands Nat'l Bank v. Tyson,* 11 V.I. at 326, 506 F.2d at 804 (return of the execution triggered the five-day period); *Lucerne Investment Co. v. Estate Belvedere, Inc.,* 7 V.I. 275, 278 (D.V.I. 1969).

168

confirming the sale without her objections. Moreover, Dodge waited more than *eleven months* after the triggering event, the marshal's filing of his certificate of sale, to raise her objections by way of the motion to annul.

The other "substantial irregularity" the court below found to warrant vacating the sale gives more cause for concern. The judge found that Mrs. Dodge's oral statements to the deputy marshals that the property upon which levy was made was her home constituted sufficient notice that she was claiming her homestead exemption. This finding was based on evidence that Mrs. Dodge made an attempt to see Chief Marshal Perez, made frequent visits to the marshal's office, and repeatedly told everyone who would listen that this property was her home and that she had nowhere else to go. Keeping in mind that Mrs. Dodge had some experience in real estate and as a businesswoman, we might well have reached a different conclusion regarding the adequacy of her efforts to notify the Office of the Territorial Marshal that the property was her home. We are unwilling to rule, however, that the trial judge abused his discretion in finding, in these particular circumstances and on this evidence, that she had given adequate notice of her homestead claim. We therefore agree that the order confirming sale must be vacated and Mrs. Dodge given the opportunity to have the extent of her entitlement to the homestead exemption determined by the trial court, but will reverse that portion of the lower court's decision setting aside the judicial sale. The court's ruling on the remanded homestead issue will determine whether or not the entire execution sale must be set aside.[12]

■ Having decided the case before us based on its unique circumstances, we do not find the Marshal's requirement for a written declaration of claim for homestead exemption to be an

---

[12] Without getting into the details of the statute and procedure for claiming premises as a homestead entitled to the exemption, we note that the homestead "shall not exceed thirty thousand dollars in value." 5 V.I.C. § 478(a). We further point out that Dodge had claimed in her bankruptcy filings that the property had a value of $50,000, although this claim was not contemporaneous with the judicial sale.

We also leave to the trial court the substitution of the proper representative for the estate of Sylvia Dodge, whom it appears has passed away during the pendency of this action. See also 5 V.I.C. § 477.

unreasonable reading of the statute.[13] Moreover, we believe that the orderly administration by the marshal's office of the judicial sale provisions of the Virgin Islands Code requires that such an important factor be committed to writing to provide certainty and to avoid the confusion that would be likely if judgment debtors could merely tell one of the deputy marshals orally that the property being attached or executing against was a homestead. Such confusion is evident in the case we have just decided. We urge the Territorial Marshal and the Territorial Court to work together to fashion some sort of information sheet describing the existence of the homestead exemption in as simple terms as possible. Possibly a preprinted form to be used for claiming the exemption could be made available to the public at the Marshal's Office.[14]

The facts and circumstances of this case bring to the fore two areas of Title 5 of the Virgin Islands Code dealing with property rights: (1) the provisions governing the judicial sale of real property, particularly the procedures for issuing a certificate of sale and an order confirming sale (5 V.I.C. §§ 489, 492) and (2) how the homestead exemption for real estate is claimed, how it is valued, and who makes the evaluation (5 V.I.C. §§ 478). These provisions cry out for clarification and we beseech the Legislature to make sense out of their very ambiguous and confusing language.[15]

Throughout this analysis, the Court has kept in mind the underlying precondition for relief under Rule 60(b), namely, that it

---

[13] Section 478(b) states that "when any officer levies upon such homestead, the owner thereof, or the wife, husband, agent, or attorney of such owner, may notify such officer that he claims such premises as his homestead, describing the same by metes and bounds, lot or block, whereupon such officer shall notify the creditor of such claim, and if such homestead exceeds the maximum in this section, and he deems it of greater value than thirty thousand dollars, then he may direct the marshal to sell such property and pay to the creditor such amount received in excess of thirty thousand dollars after first defraying the costs."

[14] This procedure which requires a written declaration merely follows the procedure the Territorial Marshal has required and thus does not implicate principles of prospective or retroactive application. *See generally, e.g., Chevron Oil Company v. Huson,* 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971); *In re Disclosure of Grand Jury Material,* 821 F.2d 1290 (7th Cir. 1987).

[15] For example, section 478(b) contains several undefined personal pronouns which makes it very difficult for the reader to determine exactly who is obliged to do what. *See supra* note 13.

must be "upon such terms as are just." In other words, we have been mindful of the equities of the case and the fact that while Mrs. Dodge delayed in bringing her objections, Mr. Camacho paid the full $9,300 for the property, some $3,800 of which was left over for Dodge after Ortiz received his payment.[16] In addition to being fair to the purchaser, the finality and regularity of judicial sales must be protected against the late claims of a judgment debtor who only goes into action on the eve of the expiration of the six-month or one-year right of redemption. While it is true that the purchaser at a judicial sale takes a gamble that the judgment-debtor will not exercise a right of redemption, he also knows that if the property is redeemed, he will get back his purchase money plus interest. We question, however, whether such a purchaser at a judicial sale would have any idea that, not only may he lose any interest in the property, but he may also be forced into a costly law suit to get his payment back by a judgment debtor who is allowed to sit on the sidelines until eve of expiration of the period of redemption without raising any timely objections to the conduct of the sale.

## CONCLUSION

In accordance with the foregoing, we affirm Territorial Court's decision vacating the order confirming sale, although on the basis of Rule 60(b) of the Federal Rules of Civil Procedure rather than 5 V.I.C. § 489. We reverse the order setting aside the judicial sale and remand the matter for further proceedings consistent with this opinion. An appropriate order will be entered.

DATED this 21 day of November, 1996.

## ORDER OF THE COURT

AND NOW, this 21 day of November, 1996, after careful review of the record and having considered the submissions and argu-

---

[16] The writ of execution levied against the property and returned on July 1, 1991 indicates that on July 1, 1991, the unpaid portion of the $4,982.91 judgment equaled $4,832.91, attorney's fees amounted to $412.50, and other costs and interest accumulated. J.A. at 9-10. Thus, the amount owed as of July 1, 1991 was $5,245.41 plus other costs and interest. The property was purchased at the Sale for $9,300, and after paying Ortiz the amount owed him, $4,054.59 less other costs and interest would have been left over as sale proceeds, presumably due to Dodge. Of course, Camacho took the property subject to the Small Business Administration mortgages already on the property. *Id.* at 119-23.

ments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED AND ADJUDGED that the order of the Territorial Court dated August 12, 1993 is AFFIRMED in part, and REVERSED in part. The matter is REMANDED to the Territorial court for findings consistent with this opinion.