**RANDAL B. KELL, Plaintiff**

**v.**

**MARK W. DAVIES A/K/A MARK DAVIES AND KIMBERLEY S. DAVIES, Defendants**

Case No. ST-10-CV-259

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

October 26, 2015

462

J. DARYL DODSON, ESQ., Moore, Dodson & Russell, P.C., St. Thomas, USVI, *for Plaintiff.*

ARTHUR POMERANTZ, ESQ., St. Thomas, USVI, *for Defendants Davies*.

Mackay, *Judge*

## MEMORANDUM OPINION

(October 26, 2015)

THIS MATTER is before the Court on Defendants Mark W. Davies and Kimberley S. Davies's Emergency Motion to Stay Marshal's Sale[1] (filed on February 3, 2015) and Plaintiff Randal B. Kell's Motion For An Order Confirming Sale (filed on February 25, 2015). For the reasons set forth herein, the Motion To Stay Marshal's Sale will be denied and the Motion For An Order Confirming Sale will be granted.

### I. Background

Kell loaned Mark Davies $1 Million in March 2008. As security for the loan, Mark Davies and Kimberly Davies gave Kell a mortgage on Parcel No. 6a-1-2 Estate Hansen Bay "A," No. 6 East End Quarter, St. John, Virgin Islands ("the Property"), and the mortgage was recorded against the Property.

Mark Davies defaulted on the loan in August 2008 and Kell filed this foreclosure suit on May 12, 2010. The following play-by-play recounts the relevant developments as the foreclosure sale unfolded:

The Court granted summary judgment in favor of Kell on April 3, 2014, and entered an amended judgment on June 11, 2014. For reasons not relevant to the present Opinion,[2] the parties on September 15, 2014, signed and submitted a Joint Motion to Enter Second Amended Judgment. The Court granted the motion and entered the Second Amended Judgment on September 17, 2014. The Clerk of the Court issued a Writ of Execution on October 6, 2014, and the Office of the Marshal (hereinafter "the Marshal") recorded a Certificate of Attachment with the Recorder of Deeds the following day. The Clerk issued an Amended Writ on

---

[1] The filing's full title is "Emergency Motion to Stay Marshal's Sale, or if the Sale has Taken Place to Set Aside Marshal's Sale."

[2] The Davieses had filed new maps of the mortgaged property with the Office of the Lieutenant Governor which necessitated a substantially new description of the property in the final judgment. That new description, which runs approximately two pages long, is omitted from this Opinion for the sake of expediency.

December 2, 2014,[3] and both the Amended Writ and the Second Amended Judgment were again recorded the following day. On December 4, 2014, the Marshal issued a Notice of Marshal's Sale and Terms of Sale setting the property's public auction for February 4, 2015, at 10:00 a.m. On December 5, 2014, the Davieses' attorney, Arthur Pomerantz, e-mailed Kell's attorney, J. Daryl Dodson, inquiring whether the Marshal had set a sale date and Dodson responded in the negative the following day. When Dodson later received a copy of the Notice of Marshal's Sale on December 9, 2014, he did not inform Pomerantz, and Pomerantz made no additional efforts to ascertain the sale date.

Beginning on January 7, 2015, the Virgin Islands Daily News ran four consecutive weekly advertisements of the sale, describing the property and the particulars of the sale. The Daily News also made the notice available in their online classifieds webpage. The St. John Tradewinds newspaper ran notices as well. Also beginning on January 7, 2015, copies of the Notice were physically posted in the Marshal's public bulletin board at the Superior Court. Notice of the sale was also available on the Superior Court website, as well as on the Recorder's website. On January 27, 2015, the day before the Daily News published the fourth and final notice, Dodson e-mailed Pomerantz to alert him to the impending sale eight days hence. This was apparently Pomerantz and the Davieses' first actual notice of the sale date.

Around this time, Dodson learned from an associate of the Davieses that the Marshal had not physically posted a copy of the Writ at the property and had reason to believe that the Davieses would rely on this failure in their legal briefings.[4] Therefore, on January 29, 2015, Kell's employee, Corby Parfitt, posted a copy of the Writ and the Notice of Marshal's Sale "on a placard in the most visible location [he] could find" on the main road in the remote property.[5] Decl. of Corby Parfitt at 1.

On February 3, 2015, one day before the sale, the Davieses filed an "Emergency Motion to Stay Marshal's Sale, or if the Sale has Taken Place

---

[3] Apparently correcting an error in the calculated interest.

[4] This concern proved prescient. See below. The Davieses, who live off island, say they had agents checking for the presence of the posting on the property.

[5] The Davieses' property is located on a peninsula at the far eastern end of St. John and is undeveloped, uninhabited, and remote. The road to the property ends in a dead end and sees little traffic.

to Set Aside Marshal's Sale." This motion, which is one of the two under review in this Opinion, argues that the Marshal's failure to post the Writ on the property and Kell's failure to notify the Davieses of the sale more than eight days beforehand should render the sale invalid. The Court did not intervene to stay the sale, which proceeded as scheduled on February 4, 2015. Kell, as the sole bidder, won the auction with a credit bid of $1.75 Million.[6] On February 9, 2015, the Marshal signed the Verified Return of Writ of Execution, which was filed with the Court on February 20, 2015. Kell moved to confirm the sale on February 25, 2015, and Davies opposed it. Since the Davieses' opposition to Kell's confirmation motion recapitulates their arguments from their Motion to Stay, the Court will consider both motions, i.e. the Motion to Stay and the Motion for an Order Confirming Sale, simultaneously.

## II. Analysis

The Davieses ask the Court to set aside the sale and deny Kell's Motion for an Order Confirming Sale for two reasons: 1.) the Superior Court Marshal did not post a copy of the Writ of Execution on the Davieses' property in violation of V.I. CODE ANN. tit. 5, § 256(1);[7] and 2.) the Davieses did not receive personal notice of the sale until eight days beforehand in violation of their due process rights. The Court will consider each of these arguments in turn, but, before proceeding to the merits of the Davieses' objections, there is a threshold matter that must be addressed. The Virgin Islands Code requires parties objecting to a sale confirmation to file their "objections thereto within five days after the return" of the writ. V.I. CODE ANN. tit. 5, § 489(1); *Camacho v. Dodge*, 947 F. Supp. 886, 35 V.I. 160, 167-168 (D.V.I. App. Div. 1996). Since the Verified Return in this case was filed with the Court on February 20, 2015, and the Davieses did not oppose confirmation until March 4, 2015, their Opposition is untimely under Section 489(1).

---

[6] This exceeds the original $1 Million loan amount primarily on account of accrued interest.

[7] Which reads: "Real property shall be attached by leaving with the occupant thereof, or if there be no occupant, in a conspicuous place therein, a copy of the writ certified by the marshal."

■ Other judges have found the five-day limit so onerous[8] that they have unilaterally decided it is merely "directory." *Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 7 V.I. 275, 278 (D.V.I. 1969); *e.g., Citimortgage, Inc. v. Manning*, 2011 V.I. LEXIS 40, at *5 (V.I. Super. Ct. 2011). This Court hesitates to adopt this position out of an appropriate deference to the Legislature, but prefers instead the holding of *Mt. Washington Estates, Inc. v. Brumick Corp.*, 10 V.I. 393, 395-396 (D.V.I. 1974), that the five-day rule admits of some flexibility in "special circumstances" where the "purpose which would have been served by a formal objection was adequately accomplished by [a different] filing." *Id.* at 396. In *Mt. Washington Estates*, that qualifying filing was a separate action for specific performance for the release of portions of the mortgaged property, which filing preceded the foreclosure sale in that case. Here, the Davieses filed their Emergency Motion to Stay on February 3, 2015, which preceded the start of the five-day clock and still raised all the same objections they would later raise in their untimely Opposition to Motion for an Order Confirming Sale. Therefore, the Court will consider the Davieses' arguments in their entirety.

## A. Failure to Post

■ Kell is "entitled, on motion therefor, to have an order confirming the sale [of the Davieses' property], unless . . . it shall satisfactorily appear that there were substantial irregularities in the proceedings concerning the sale, to the probable loss or injury of" the Davieses. V.I. CODE ANN. tit. 5, § 489(1)-(2).[9] The statutory procedure for a foreclosure sale requires, inter alia, that the Marshal leave "a copy of the writ certified by the [M]arshal" "with the occupant" of the property "or, if there be no occupant, in a conspicuous place. . . ." V.I. CODE ANN. tit. 5, § 256(1).[10]

---

[8] The rule is particularly unforgiving in this case, where Kell's confirmation motion itself came more than five days after the return of the Writ. Taking the statute literally would require the Davieses to object to a confirmation motion preemptively.

[9] Strictly speaking, this standard applies to a post-sale confirmation motion, not a pre-sale motion to stay. However, the Court sees no reason to suppose that a different standard applies to a pre-sale motion (nor have the Davieses offered a reason), or, if there is a different standard, to suppose that it would any longer apply once the sale has occurred.

[10] In actuality, this is the required procedure for executing writs of attachment. The Code does not include a comprehensive set of procedures specifically tailored for foreclosures. Instead, V.I. CODE ANN. tit. 5, § 480(4), which concerns levies on property, incorporates the

The Davieses allege, and Kell admits, that the Marshal did not comply with the law here[11] and the Court is satisfied that this statutory violation constitutes an "irregularity." But not just any "irregularity" will defeat a confirmation motion; it must be "substantial" and it must have caused "probable loss or injury."[12] § 489(2); *see Stack's v. Gordon*, 17 V.I. 177, 186 (Terr. Ct. 1981). Assessing procedural irregularities "is largely a matter of sound judicial discretion." *Christian v. Newfound Bay*, 962 F. Supp. 673, 36 V.I. 279, 281 (D.V.I. 1997). Other judges have found substantial irregularities where the auction price was inadequate or there were odd bidding values, *Lucerne Inv. Co.*, 7 V.I. at 279; *cf. Stack's*, 17 V.I. at 184; *Christian*, 36 V.I. at 282-83, where the description of the property was inadequate, e.g., where the notice failed to mention that the real property contained buildings or other structures, *Lucerne Inv. Co.*, 7 V.I. at 280-281; *cf. Stack's*, 17 V.I. at 184-85, where there were unnatural combinations of disparate parcels into a single auction, *Lucerne Inv. Co.*, 7 V.I. at 279-80; *cf. Thornberg v. Jorgensen*, 60 F.2d 471, 1 V.I. 606, 615 (3d Cir. 1932), or where the Marshal sold the wrong property. *Citimortgage, Inc.*, 2011 V.I. LEXIS 40, at *5-9 (voiding a sale because the Marshal sold real property when the writ of execution was limited to personal property); *cf. Stack's*, 17 V.I. at 185. The common thread in these

---

procedure for writs of attachment from Section 256 by reference. Section 480 is itself incorporated into foreclosure procedures by V.I. CODE ANN. tit. 28, § 534(a).

[11] J. Daryl Dodson, Kell's attorney, says that the Marshal's Office informed him that it has adopted the practice of recording copies of the writ of execution with the Recorder of Deeds rather than physically posting copies on site. Decl. of J. Daryl Dodson at 2. Whatever the wisdom of this decision as a matter of policy, it is disturbing that the Marshal's Office is not in full compliance with the law. In adopting Section 480(4), the Legislature unambiguously chose physical delivery or posting as its preferred procedure and expressly excluded recording. Only the Legislature, not the Marshal, can change this rule. If Kell has accurately described the situation, and prior cases suggestion he may have, *see, e.g., Camacho*, 35 V.I. at 163; *cf. Christian v. Newfound Bay*, 962 F. Supp. 673, 36 V.I. 279, 282 n.1 (D.V.I. 1997), the Marshal should not interpret the ultimate holding in this Opinion as sanctioning any deviation from the requirements of the V.I. Code.

[12] It is not perfectly clear whether Section 489(2) requires qualifying irregularities both to be "substantial" *and* to cause loss, or whether an irregularity is "substantial" *because* it causes loss. As a matter of syntax, the Court prefers the former construction, but it worries that such a construction could allow "minor" irregularities to cause an injury without affording a remedy. However, it is not necessary to come to a definitive conclusion here since either construction will lead to the same result in this case.

cases is that they involve pecuniary loss,[13] i.e. the procedural irregularities drove down the auction price. Indeed, *Christian* went so far as to hold that there should be "certainty that a resale would produce a higher price" before that resale is justified and that "if the alleged error causes no prejudice, then the Court should confirm" the sale. 36 V.I. at 282.

The Davieses do not explain in any detail how they are in a worse position now, financially or otherwise, than they would have been if the Marshal had left a copy of the Writ along the road in the bushes. They certainly do not allege that the auction price for their property was artificially low on account of the irregularity. Instead, their filings for the most part contain bald legal conclusions, e.g., "these irregularities [i.e. the Marshal's failure to physically post the writ] were substantial, and they prejudiced Defendants," Defs.' Opp'n to Mot. for an Order Confirming Sale at 1, and "Said impropriety [i.e. the Marshal's failure] was material and caused Defendants harm." *Id.* at 5. At their most specific, they appear to argue that with a proper posting, they would have had time to acquire financing to purchase the property at the Marshal's sale.[14] *E.g., id.* at 4 ("[N]otifying Defendants sufficiently in advance of the sale [would] give them enough time to make arrangements to save the property at sale. . . . Defendants needed more than eight days to make financial arrangements to *redeem* their property") (emphasis added). Their missed bidding opportunity was their "probable loss or injury."

■ This alleged injury is not convincing. First, the Davieses have not shown that this alleged injury was "probable" in that they have offered no reason to believe that they could have raised substantially more money to finance a bid than they have been able to raise for the past seven years to pay their debt. Second, they have not shown that their not bidding actually injured them. The Davieses have the right to redeem the property for six months after the sale is confirmed, V.I. CODE ANN. tit. 28, § 535, and making financial arrangements to outbid Kell actually would have caused the Davieses a relative loss because they would have had to exceed Kell's bid (and any rebids) at sale, whereas they would only have to match Kell's bid post hoc for redemption. *Id.*; V.I. CODE ANN. tit. 5, § 496. The

---

[13] Or worse, as in *Citimortgage.*

[14] The Davieses actually make this argument when addressing the due process question, but it seems plaustbly applicable here as well.

Davieses alleged plan would actually cost them more money out of pocket.[15]

Third, the Davieses have not shown to the Court's satisfaction that the Marshal's failure to post the Writ legitimately deprived them of any useful or consequential notice. The Davieses claim that Kell's failure to notify them of the sale forced them to "rely on legal technicalities" such that they "had agents, including a realtor and friends, check the property for a multitude of purposes, including for any posting" so that they could learn about the sale. Defs.' Resp. to Pl.'s Reply to Opp'n to Mot. for an Order Confirming Sale at 1. Yet, at the same time, the Davieses say that their "liv[ing] off island [meant that they] were not aware of the sale through advertising and public posting." Opp. at 3. Perhaps the Davieses were hoping for this legal technicality since they did not expend any effort, either personally or through their agents, to pick up a phone, visit a web page, read the newspaper, or stop by the courthouse to determine the date of the sale. The Marshal's failure to post the writ had only a negligible effect on the overall universe of notice available to the Davieses. Indeed, a writ of execution, which is all that must be posted under Section 256(1), does not even include the date or time of the sale. At best, it would inform the Davieses that the sale, which they already knew to be imminent by virtue of the Second Amended Judgment, entered on September 17, 2014, was even more imminent. For all these reasons, it does not "satisfactorily appear" to the Court that any "loss or injury" is "probable" and the Court will not reject the sale.

## B. Due Process

 The Davieses also allege that their due process rights were violated because they did not receive timely personal notice of the sale.[16] Unlike

---

[15] In terms of the Davieses' total debt, of course the two scenarios (outbidding Kell at the sale versus redeeming the property later) might reasonably be considered equivalent, since a higher bid at auction would have a corresponding reduction of any deficiency liability. Even so, bidding at auction would not have *improved* the Davieses position. And while it is true that the cost of redemption might be nominally higher due to accrued interest, V.I. CODE ANN. tit. 28, § 535, that cost is economically equivalent to matching the auction price, since interest, by definition, merely adjusts the amount due to account for the time value of money.

[16] It is not clear whether the Davieses claim the alleged due process violation is a "substantial irregularity" under Section 489, or whether they believe a due process violation would nullify the sale sua sponte. The Court assumes, without deciding, that a finding of a due process

the argument above, they do not here allege any particular violation of the statutorily prescribed sale procedures, but rather argue that the Code's failure to mandate personal notice of the sale is itself a violation of due process.[17] In a foreclosure judgment, the V.I. Code requires that a notice of sale, which should include "the time and place of sale, particularly describing the property," be posted somewhere "in or near the office of the clerk of the court," V.I. CODE ANN. tit. 5, § 484(a)(1), that the notice be "published in a newspaper which is published in the judicial division . . . in which the sale is to take place," § 484(a)(2), and that the posting and publication must occur weekly for at least four weeks. § 484(c). The Code does not require that the Davieses receive personal notice. Aside from the problems addressed above concerning the Marshal's failure to physically post the Writ at the property; the Davieses admit the Code was followed and instead argue that the Code is constitutionally deficient for not requiring personal notice.

■ In *Estate of Ludington v. Jaber*, 54 V.I. 678 (V.I. 2011), the Supreme Court of the Virgin Islands explained that due process:

> . . . requires that adequate notice detailing the reasons for a proposed termination of a constitutionally protected liberty or property interest must be afforded to individuals prior to the deprivation." *Taylor v. Slick*, 178 F.3d 698, 703 (3d Cir. 1999)) . . . . That notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). Procedural due process analyses, however, are "flexible and call[ ] for such procedural protections as the particular situation demands," therefore [t]he level of notice to be given . . . depends on the

violation ought to result in the denial of Kell's motion for confirmation one way or another.

[17] Given this position, the Davieses ought to have served a copy of this challenge on the Attorney General of the Virgin Islands and given him or her sixty days to intervene and defend the constitutionality of Virgin Islands law. FED. R. CIV. P. 5.1 (as incorporated by SUPER. CT. R. 7). Nonetheless, it is appropriate for the Court to enter this Opinion without the Government's input since this decision upholds the Code's constitutionality. FED. R. CIV. P. 5.1(c) (as incorporated by SUPER. CT. R. 7) ("[b]efore the time to intervene expires, the court may reject the constitutional challenge, but may not enter a final judgment holding the statute unconstitutional").

471

interest at issue." *Id.* (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972)).

*Estate of Ludington*, 54 V.I. at 684.

Although the Davieses cite *Estate of Ludington* in passing, their briefings offer only one direct case comparison: *First E. Bank, N.A. v. Campstead, Inc.*, 432 Pa. Super. 241, 637 A.2d 1364 (1994). Not only does this case come from a source, the Superior Court of Pennsylvania, that has scant persuasive, let alone binding, authority in Virgin Islands courts, but the case concerns the application of the Pennsylvania Rules of Civil Procedure.[18] This is not adequate as the fulcrum of a constitutional challenge to the Virgin Islands Code; the Davieses provide no case law from a binding authority, or even from the V.I. Superior Court, that shows similar notice schemes running afoul of the Due Process Clause. Given the Court's properly deferential presumption of constitutionality for duly enacted legislation, *Azille v. People of the Virgin Islands*, 59 V.I. 215, 227-28 (V.I. 2012); *cf. United States v. Whited*, 311 F.3d 259, 266-67 (3d Cir. 2002), and given *Estate of Ludington*'s holding that a proper due process analysis is necessarily fact-intensive, it is practically impossible for the Davieses to show a Due Process Clause violation without an affirmative showing of compelling case law in which an authoritative court held unconstitutional a relevantly similar statutory scheme. The Court will not find the Virgin Islands Code constitutionally deficient by analogizing from the opinions of intermediate appellate courts in other states.

Still, even just considering the general principles of due process laid out in *Estate of Ludington*, it is clear the Davieses have overstated their case. The Davieses claim that their "interest at stake is great — potential loss of 17 acres of real property; and the burden of providing adequate notice was very slight — simply notifying Defendants sufficiently in advance of sale to give them enough time to make arrangements to save the property at sale." Defs.' Opp'n to Mot. for an Order Confirming Sale at 4. This is just plain incorrect. In fact, the Davieses' property interest in their land is practically unaffected by the auction itself, because the Davieses' interest had already been finally adjudicated by September

---

[18] Albeit with reference to general due process principles in the course of construing the Pennsylvania Rules.

2014 when the Court entered the Second Amended Judgment upon the parties' *joint* motion. The Davieses had their "opportunity to present their objections" to Kell's claims on their property during the pendency of this case (for which they received personal notice when they were served with copies of the Summons and Complaint on August 9, 2010).[19] No amount of preparation for the Marshal's sale would undo the Court's Second Amended Judgment, jointly filed by the parties, wherein the Court ordered that the Davieses' property be sold.

Nor would the sale place the Davieses' interest in the property at risk in a formalist sense. Title to the property does not pass to the highest bidder at sale; rather, it would pass only after the Davieses have received their six-month post-confirmation opportunity to match the bidder's price. V.I. CODE ANN. tit. 5, § 497. Therefore, the Davieses interest in the sale itself is actually quite minimal, since it neither affects their legal rights to the property nor does it affect title. The only thing the Davieses, or any similarly situated foreclosure defendant, could do at the sale itself is bid. And, as noted above, this opportunity to bid is practically valueless or even counterproductive when done in the context of the exclusive right of redemption under V.I. CODE ANN. tit. 28, § 535, since outbidding the competition would be more expensive than exercising that redemption right.[20] Although the Davieses' interest in their property is uncontestedly high, that property interest was not at risk at the Marshal's sale itself. Therefore, their need for notice of the sale is consequently quite modest.

■ Given the limited risk to Davieses' property interest at the sale, and given that they have offered no authoritative examples of relevantly similar procedures violating the Due Process Clause itself, the Court has no cause to hold that personal notice of the sale on top of numerous public

---

[19] Although the Davieses answered the Complaint, they did not oppose Kell's Motion for Summary Judgment.

[20] It is possible that foreclosure defendants might also attempt to drum up third-party bids to raise the sale price on their property, but the Davieses have only expressed an interest in bidding on the property themselves. Or, it is also possible that exceptionally skilled defendants might be able, through sophisticated bidding strategies, to force the winning bidder into a higher bid than the winner would have made otherwise, thereby satisfying more of the defendants' debt or increasing the surplus. But, again, the Davieses have not alleged that this was their intention and it is difficult to imagine that the opportunity to manipulate other auction participants (or to create third party interest) could be a constitutionally protected right.

postings and newspaper publications is compulsory under the Constitution.

## III. Conclusion

The Court finds that the Marshal's failure to physically post the Writ of Execution to the Davieses' undeveloped property was not a "substantial irregularit[y]" because the Davieses have not shown that it caused prejudice, loss, or injury. The Court further finds that the Davieses have failed to make a compelling argument that the Due Process Clause requires personal notice of a Marshal's sale on top of the current provisions of the V.I. Code. Therefore, the Court will deny the Davieses' Emergency Motion to Stay Marshal's Sale and grant Kell's Motion for an Order Confirming Sale. An appropriate order will accompany this Memorandum Opinion.